# The Thompsonville Scale Manufacturing Company *vs.* Horatio B. Osgood.

A petition in chancery for the reformation of a written contract should embody both the defective instrument and the real agreement.

And ought to show that the respondent is not only able to take an unconscionable advantage of the erroneous contract, but is meditating it.

If a clause which the petitioner claims should have been inserted in the contract, is not one which the parties agreed on and omitted through mistake, but merely one which ought as a matter of propriety to be inserted, a court of chancery will not interfere; it not being within its province to make or ameliorate contracts for parties.

Whether, after amending an erroneous instrument, chancery will remand the parties to law, or will summarily settle all their rights according to the spirit of the reformed agreement; *Qu.* The tendency of American jurisprudence is in favor of the latter course, while the weight of authority in England is against it.

Although the granting of an injunction is to a certain extent a matter of discretion with the court, yet where no equitable case appears on the record, the decree of the court below will be reversed on a writ of error.

This was a petition in chancery, praying for the reformation of a contract, and an injunction against the prosecution of an action at law. The superior court, (Hartford county, December term, 1856,) made a decree amending the contract and enjoining the respondent according to the prayer of the petition. The respondent then brought the record before this court by motion in error. The opinion of the court can be sufficiently understood without a statement of the facts of the case, which would occupy several pages.

*Hungerford* and *W. N. Hawley*, for plaintiff in error.

*Parsons*, for defendants in error.

Storrs, C. J. Apart from the alleged existence in their written agreement, of such a mistake as equity ought to correct by a reformation of the instrument, no reason for the petitioners' resort to chancery appears of record. It follows, that unless the error of the contract is properly exhibited in the bill, and established by the decree, nothing remains to

Thompsonville Scale Manufacturing Company *v.* Osgood.

support the judgment of the superior court; inasmuch as we do not sanction the idea, that, because an injunction may, as a mere remedy, be granted, at the discretion of the subordinate tribunal, after an equitable case has been made out, the exercise of this important power may not be supervised by this court when no such case is shown.

Other suggestions of a different tenor, offered by counsel concerning the peculiar remedy applied in the decree, have not been formally considered; and we omit to decide, whether, after amending an erroneous instrument, chancery will remand the parties to law, or will venture summarily to settle all their rights according to the spirit of the reformed agreement. It is not to be denied, that the tendency of American jurisprudence is to favor the latter course, while the weight of authority in England is against it.

When a court is requested so to remodel a contract in writing that it may express the true understanding of the parties, it is necessary that both the defective instrument and the real agreement should be embodied in the petition. Otherwise the bill would lack substantial requisites. Without referring to the right of a respondent to be fairly apprised of the precise nature of a petitioner's claim, we can not suppose that a court can intelligently reform a contract, without something more than general and vague statements concerning the intent of parties. How far an observance of the true rule would have aided the present petitioners we are not able to judge, as the ineffectual allegations of the petition are in no wise cured by the finding embodied in the decree; both seeming alike insufficient and erroneous.

We gather, with some difficulty, from the bill, that those parts of the agreement which shed light on the present controversy, import the following arrangement between the parties. The petitioners, a corporation, agreed to take off from the hands of the respondent, a stockholder, the shares held by him, of the par value of two thousand dollars, and certain other shares held by the respondent's brother, of the par value of two hundred and fifty dollars; and to pay for the stock so received in certain specified scale-castings at an

appraisal; to furnish him the other parts of the scales, necessary to perfect the article, at specified prices, and also to provide for him certain facilities of manufacture. If the castings and work, to be taken by the respondent in payment for the shares, did not amount to 2,000 dollars, other property was to be delivered and accepted for the balance. If the castings and work exceeded that sum, the company were to receive the brother's stock in payment for the excess.

This contract—which was the real understanding of the parties—was reduced to writing, "executed and delivered." It is not averred anywhere in the bill or decree, in terms, that any different or additional agreement was suggested or concluded between them. The subsequent allegation of the existence of a mistake in the document, gives rise, therefore, to no little perplexity.

"By mistake and oversight," says the pleader, "said contract does not limit the amount of stock which said [respondent] might transfer to the [petitioners,] but provides that if the castings or work to be furnished to said [respondent] should amount to more than 2,000 dollars, the said [respondent] was to transfer to said company, [the petitioners,] the stock of said company at par." This clause has a manifest reference to that part of the instrument, which permits the respondent to pay any excess of the value of the castings (required and received by him) over the value of his own stock, in the shares of his brother, "to the amount of 250 dollars." We confess that we are unable to see that "the contract does not limit the amount of stock which might be transferred to the petitioners" in payment for castings; but, on the contrary, no permission is given to convey any other shares for that purpose than those owned by the respondent and his brother, of the aggregate value of 2,250 dollars. We must conclude, therefore, that an unwarranted inference was drawn by the pleader from the instrument which he sets forth in his bill.

The next succeeding averments of the petition tend to increase the confusion which the record presents. They would seem to recite the causes of apprehension, to which

the mistake or omission in the agreement gives color. It is said that the respondent, by virtue of a "similar contract," (which we suppose to mean another contract of the same import with the instrument set forth,) claims that the petitioners are to furnish him castings "to an unlimited extent, if needed in the manufacture of scales;" also, that he claims "they are bound to furnish him additional castings to the amount of 3,000 dollars and upwards," besides what he has already obtained; and that he has sued them at law for their neglect to provide these additional articles, demanding very heavy damages.

Now it is perfectly clear, that the claim for this excessive amount of castings, upon which the respondent founds his action for damages, can not rest upon that part of the written contract which enables him to pay for 250 dollars worth of them in his brother's stock. Nor if this portion of the instrument were susceptible of the singular construction put upon it by the pleader, so that it would enable the respondent to pay for all the castings called for by the contract, in the company's stock, do we see any averment in the bill which justifies the petitioner's claim. It is not suggested that the respondent has possessed himself of other shares in the stock, besides his own and his brother's, and that he has tendered them in lieu of money, demanding castings in return therefor, or that he threatens to do any thing of the kind. Nor do we suppose that such is the case in fact. Until it appears, then, that some such unconscionable advantage is meditated, and that, if meditated, it is possible to effectuate it by reason of the phraseology of the contract, we can not justify the interference of a court of chancery.

Another difficulty seems to attend this bill. If, as seems to be the case, the clause of limitation, which is said to have been omitted by inadvertence, was not a matter of specific agreement,—if it is merely something that ought to have been inserted in the instrument as a matter of propriety,—there was no reason for a court of chancery to disturb the instrument. Equity will neither make nor ameliorate agreements, nor supply new terms to contracts not wisely and

thoughtfully made. If, therefore, the present bill was brought to procure the insertion, in the instrument set forth, of a clause about which the parties had no understanding whatever, the respondent might justly reply, that the contract embraced no more and no less than was agreed upon; that, if silent on the point in controversy, it could not affect the petitioners; if it spoke, it bound them.

On the whole, the record discloses no danger to the petitioners, against which they should invoke the protection of a court of chancery; for their liability to be called upon for too many castings, can only result from their agreement to furnish the respondent with all he needed for a certain purpose. It discloses no important omission in their contract; for the limitation which they seem to desire, sufficiently appears. It discloses no mistake, for the contract is expressly said to have been reduced to writing as it was made, and every agreement which was actually entered into or reciprocally understood, is embodied in it.

The judgment of the superior court is therefore erroneous.

In this opinion the other judges concurred.

Judgment reversed.