## YOUNG *et al.* v. THE WEBSTER CITY & SOUTHWESTERN RAILWAY COMPANY *et al.*

1. **Railroads**: FORFEITURE OF FRANCHISES BY NON-USER: WHAT IS NOT. The defendant company did not begin to build its railroad until more than two years after its organization, nor did the subscribers to the capital stock sooner pay up their subscriptions and take certificates of stock; but the company was continuously engaged in efforts, requiring the expenditure of money, to procure the additional means necessary to build the road. *Held* that these acts were such an exercise of its franchises as would prevent a forfeiture under section 1079 of the Code.

2. ———: TAX IN AID OF: VALIDITY: PROMISES TO REMIT TAXES: EVIDENCE. The claim that a tax voted to aid the defendant company in the construction of its road was invalidated, under section 8, chapter 159, Laws of 1884, on the ground that the company procured the tax to be voted by promising taxpayers to remit their taxes, *held* not to be sustained by the evidence.

3. ———: ———: ———: COMPLIANCE WITH TERMS. The condition on which a tax was voted to aid in the construction of defendant's road was that the road should be built from a given point to some point of intersection with another road, so that there would be a continuous line of road to a named station on such other road. *Held* that this did not require that defendant should build a continuous line of road from the given point to such station, but that it was sufficient that such station might be reached by a continuous line by the use of the line of such other road from the point of intersection to such station.

4. ———: ———: CITY IN TOWNSHIP : BY WHOM VOTE TO BE ORDERED. Where there is a city within the limits of a township, but not coterminous with the township, the township trustees may order the submission of the question whether the township, including the city, will vote a tax in aid of the construction of a railroad.

5. ———: ———: ORDERING ELECTION : TOWNSHIP TRUSTEES : POWER OF MAJORITY : NOTICE TO THE OTHER. Where called meetings of boards of trustees or other bodies are necessary, it is not required, in the case of the absence of members, that the meetings be deferred until their return, in order that they may be notified thereof, but the majority may act without such notice. So *held* where two of the trustees of a township, without notice to the third one, who was absent from home, in a called meeting, ordered an election upon the question of voting a tax in aid of the construction of a railroad.

*Appeal from Hamilton District Court.*—HON. S. M. WEAVER, Judge.

FILED, SEPTEMBER 7, 1888.

THIS is an action in equity, the object of which is to restrain the collection of a tax levied to aid in the construction of the Webster City and Southwestern Railroad, upon the grounds that said tax is illegal and void. There was a full trial in the district court, and the petition of the plaintiffs was dismissed. They appeal.

*W. J. Covil,* for appellants.

*Chase & Chase,* for appellees.

ROTHROCK, J.—I. The Webster City and Southwestern Railroad Company was duly incorporated in the month of September, 1883. The object

1. RAILROADS : forfeiture of franchises by non-user: what is not,

and purpose of the incorporation was to build a railroad from Webster City to certain coal mines on the Des Moines river, in Webster county. The company was organized by W. C. Wilson, Jacob M. French and S. B. Rosenkrans, who each subscribed five thousand dollars to the capital stock of the company. They were all residents of Webster City, and in its inception the enterprise was purely local. It was not supposed that a sufficient sum of

money could be raised by subscriptions to the capital stock by persons resident of Webster City to construct the road. A survey of the proposed road was made, the expense of which was paid by the stockholders ; and the township of Boone, in October, 1883, voted a three per cent. tax to aid in the construction of the road. Afterwards efforts were made to secure aid by taxation in other townships, which failed ; and, after active efforts on the part of the company to secure aid to build the road, but without success, in September, 1884, the company released the three per cent. tax which had been voted in Boone township. During the year 1885 the board of directors of the company held meetings to devise ways and means to proceed with the enterprise. About the fifteenth day of February, 1886, petitions were put in circulation for an election in Boone township for a tax of five per cent. to aid in building the road. A majority of the resident freehold taxpayers signed the petition. An election was ordered and held, at which a large majority of the legal voters voted in favor of the tax. The road was built, and the township trustees certified that the company had earned the tax, and it was levied by the board of supervisors. It is claimed by the appellants that the tax is illegal and void upon several grounds, which we will proceed to examine.

It is insisted that the Webster City and Southwestern Railway Company had ceased to exist as a corporation before the tax in question was voted. The claim is based upon section 1079 of the Code, which is as follows : "Any corporation, organized in accordance with the provisions of this chapter, shall cease to exist by the non-user of its franchises for two years at any one time ; but such body shall not forfeit its franchises by reason of its omission to elect officers, or to hold meetings at any time prescribed by the articles of incorporation or by-laws, provided such act be done within two years of the time appointed therefor." If we were to concede that the mere non-user of the franchises of the company for two years would avoid the tax, without a judgment

of forfeiture by a competent court ( a question which we need not determine ), the evidence in the case falls far short of showing that there was such non-user for the time provided by the statute. It is true, the company was incorporated in September, 1883, and it did not commence to build its road until April, 1886, a period of more than two years ; but the law does not provide that a railroad company shall forfeit its charter if it does not commence the building of its road within two years after it acquires its charter rights. It máy use "its franchises" as effectually in raising means to build its road, in making preliminary surveys, and in many other ways, as it can in grading and laying ties and iron. Bromin defines a franchise to be "a particular privilege conferred by grant from government, and vested in individuals." "The corporation itself is not a franchise, but it is the attributes of the corporation which comprise the franchises thereof,—its special powers and rights." 1 Wood, Ry. Law, sec. 14, p. 27. Now, it is perfectly apparent that any acts done to further the objects of the corporation are the exercise of its franchises. The record shows the expenditure of money and efforts made to procure additional means to construct the road, and that such efforts were continuous and persistent. The fact that the subscribers to the capital stock did not pay up their subscriptions, and take certificates of stock, was not a non-user of the franchise or right to build the road.

II. It is next claimed by appellants that the defendant company procured the tax to be voted by promising taxpayers to remit their taxes.

2. ——: tax in aid of : validity : promises to remit taxes : evidence.

If this claim is well founded, the tax is void. It is expressly so provided in section 8, chapter 159, Acts Twentieth General Assembly of this state. But a careful examination of the evidence demonstrates that this claim is without foundation. There is a clear preponderance of the evidence to the effect that no taxpayer was induced to either sign the petition or vote at the election for the tax upon any offer or promise of exemption from payment by any officer

or agent of the company, or by any other person. We need not set out nor discuss the testimony of the witnesses upon this question. It is enough to say that there is no ground for sustaining the claim.

III. It is next insisted that the road has not been constructed as required by the petition and notice. It is not claimed that the road that was actually constructed was not finished before the time named in the petition and notice. The question involves a construction of the notice for the election so far as it pertains to the line of road to be aided by the tax. The parts of the notice upon which the question arises are as follows: " At said election the question will be submitted to the voters of said township of aiding said railroad company in the construction of its railroad between Webster City, Iowa, and a point on the line of the Webster City & Crooked Creek Railroad, in the county of Webster, in the state of Iowa, by the levy and collection of a five (5) per cent. tax on the taxable property in the said township of Boone, which said tax shall be levied at the time of levying the ordinary taxes of 1886, on the valuation of 1886, at the rate per centum aforesaid ; and said tax shall be collected at the time of collecting the ordinary taxes of 1886, and paid over in one year, and the amount of work upon said proposed railroad line required to be completed before said tax shall be paid to the said railroad company shall be as follows, to-wit: Said railroad shall be completed, and the depot of said company located and built within one-half mile of the courthouse in Webster City, Iowa ; and the work shall be performed between said depot and a point on the Webster City & Crooked Creek Railroad, so as to make a continuous line of railroad from the coal mines at Crooked Creek to Webster City. Said road is to be built standard gauge and laid with fifty-pound steel rails substantially similar to those used on the Northwestern Railway ; and said road shall be fully completed, so that trains can be run over the same from said depot to Lehigh, before said tax shall become due, collectible and payable ; and said aid

3. —— : —— :
—— : compliance with terms.

and tax, if voted and given to said railroad company, is voted and given under an express agreement by said company that said line of road between Webster City and said point on the Webster City & Crooked Creek Railway in Webster county shall be run and operated as a continuous line, from Webster City to the coal mines at Crooked Creek ; and said company shall always maintain and keep a depot for the transaction of its business for the convenience of the people of Webster City, at some point in said city not more than half a mile from the courthouse ; and if the road is not completed between the points named, and the depot built and established, as herein provided, by the first day of September, A. D. 1886, so that a railroad train is run over the entire length of said line from Lehigh to Webster City by that date, then the tax shall be void ; and no tax shall be levied in aid of said railroad company unless said railroad is built as above stated, and within the time named, which shall be evidenced by running a train or trains over the entire length of said line by said first day of September, A. D. 1886." It should be stated that some years before the defendant company was incorporated, the Webster City & Crooked Creek Railroad was built from a point on the Illinois Central Railroad west of Webster City, to the coal fields which the projectors of the defendant company desired to reach with its road. The first-named road ran south from the Illinois Central line, and the defendant's road was built southwest from Webster City to a junction with the Crooked Creek road, some two or three miles north of Lehigh. The contention of the plaintiffs is that under the notice the defendant company was bound to build a continuous and independent line of railroad to Lehigh. Without elaborating this question, we deem it sufficient to say that we do not think this is a proper construction of the notice. The requirement is that the road is to be built to a point on the Webster City & Crooked Creek Railroad, in the county of Webster. The place at which the junction is to be made is

not designated in the notice.   The object was to have a continuous line of railroad from Webster City to the Crooked Creek coal fields at Lehigh. If it was intended that a new line of road should be built from the junction with the Crooked Creek road, surely apt words would have been used to express that intention, and there would have been no necessity of providing for building to a point on that road ; and when a junction with that road is made, there is a continuous line of railroad from Webster City to Lehigh.   We think that the township trustees properly construed the notice when they certified that the defendant company had complied therewith by building the line to a point on the Crooked Creek road.

IV.   Another objection to the validity of the tax is that Webster City is within the township of Boone, and the election should have been ordered by the corporate authority of the city.   It is sufficient to say of this objection that the boundaries of the city and the township are not the same.   The township embraces territory not within the corporate limits of the city.   In such case the township trustees are the proper persons to order the election.

4. ——:——:
city in town-
ship: by
whom vote to
be ordered.

V.   There were but two of the township trustees present at the meeting at which the petitions for the election were presented and considered, and but two joined in issuing the notice of the election. The evidence shows without question that the petitions presented to the trustees contained the names of quite a large majority of the resident freehold tax payers. It was therefore the duty of the trustees to order the election.   If they had refused to do so, they could have been compelled to act by *mandamus*. Appellants contend that the tax is void because the third trustee was not present at the meeting, and was not notified that a meeting would be held.   The meeting at which the action was taken was not a regular meeting provided for by law ; it was a called meeting.   We do not understand that counsel claim that a majority of

5. ——:——:
ordering elec-
tion : town-
ship trustees:
power of ma-
jority: notice
to the other.

the trustees could not act legally in the premises. But it is claimed that all of the trustees should have had notice of the meeting. It is claimed by the defendants that the evidence shows that the absent trustee could not have been notified of the meeting, because on that day he was absent from the township. It appears that the person who was designated to give the notice learned upon inquiry that the trustee was absent, and we think the claim that he was actually out of the township is fairly sustained by the evidence. In such case no notice could be given, and we think that the acts of the majority were valid. It is neither charged nor shown by evidence that any fraud was intended by any one in presenting the petitions to the two trustees; on the contrary, the testimony is absolutely conclusive that a majority of the resident freehold taxpayers petitioned for the election, and it was the duty of the trustees to order the same. Where called meetings of boards of trustees or other bodies are necessary, it is not required that, in case of the absence of members, meetings must be deferred until their return, in order that they may be notified thereof. All that can reasonably be required is that notice be given to those upon whom service could be made. We think that no valid reason appears upon this record why this tax should not be paid.

AFFIRMED.