CRAWFORD ELECTRIC COMPANY, In Equity,

*vs.*

KNOX COUNTY POWER COMPANY AND HOLLIS M. SHAW.

STATE OF MAINE,
By Information of Attorney General of the State of Maine,

*vs.*

HOLLIS M. SHAW.

Knox.    Opinion March 17, 1913.

*Electricity.    Equity.    Franchise.    Information.    Injunction.    Highways.    License.    Municipal Officers.    Permit.    Quo Warranto.    Revised Statutes, Chapter 47.    Revised Statutes, Chapter 55, Section 1.    Revised Statutes, Chapter 51, Section 1.    Public Laws of 1885, Chapter 378.*

1. That authority in one corporation to supply gas or electricity or both, in a certain territory is, under R. S., Chap. 55, Sec. 1, prohibitive of the

right of another corporation to supply either in the same territory, unless by consent or by special legislative authority.

2. That this prohibition is confined to corporations subsequently organized under the general laws of the State, and does not extend to a private individual.

3. A private individual, without special legislative authority, has a legal right to generate and sell electricity for public and private purposes and to light the streets of a town, provided he has a legal permit from the municipal officers of the town to erect and maintain his system of poles and wires along the public highways.

4. That in so doing, he is not usurping a public franchise, strictly speaking, and quo warranto proceedings will not lie against him.

5. That there is a marked distinction between a franchise which is essential to the creation and continued existence of a corporation, a right to exist as an artificial being, and which must be conferred by the sovereignty of the State, and those rights and powers which are subsidiary in their nature, and which, though often conferred upon corporations, are held and enjoyed by private individuals without any grant from the Legislature.

6. That a franchise is a privilege or immunity of a public nature which cannot be exercised without the express permission of the sovereign power, that is, without legislative grant.

7. That the right to furnish electric light and power, aside from the right of eminent domain, is not strictly speaking a franchise, but a privilege or power which may be granted to a corporation by the Legislature, but is open to any individual without such grant. There is nothing pertaining solely to sovereignty in the selling of electricity for lighting purposes. Though differently measured, it is as much a commodity as kerosene, and natural as well as artificial persons should be allowed to deal in it.

8. That the Legislature, by virtue of its control over the public roads of the State, may expressly grant to a person or corporation authority to erect his or its lines along and upon such roads and ways or it may delegate that power to the municipal officers of the various cities and towns as has been done by R. S., Chap. 55, Secs. 16-24. That however is a power and not a franchise and can be exercised by an individual as well as by a corporation.

On report. Bill in equity dismissed with costs for each defendant. Information dismissed without costs. So ordered.

This bill in equity was brought by the *Crawford Electric Company* v. *Knox County Power Company and Hollis M. Shaw*, asking that the respondents be enjoined from making, generating, selling, distributing or supplying electricity for lighting, heating, manufacturing, etc., in the towns mentioned in the counties of Knox and

Waldo.  In the quo warranto proceedings, charging the defendant Shaw with usurping two public franchises, the same facts and the same propositions of law are involved as are involved in the bill in equity; they were argued together and are decided and disposed of in the same opinion.  Answers and replications were filed to the bill in equity, and by agreement, said answers were adopted as the pleadings in the quo warranto.

The foregoing bill in equity and quo warranto are reported upon the following stipulation:

The above entitled matters having come on to be heard and the undersigned Justice being of the opinion that questions of law are involved, of sufficient importance, or doubt, to justify the same, and the parties agreeing thereto, the same are reported to the next term of the Law Court, for determination, in accordance with the foregoing stipulation and agreement.

The case is stated in the opinion.

*A. S. Littlefield,* for Crawford Electric Company.

*W. R. Pattangall,* Attorney General, for the State.

*Samuel Titcomb,* for Knox County Power Company.

*Benedict F. Maher,* for Hollis M. Shaw.

SITTING:  WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

CORNISH, J.  These cases were reported and argued together because they involve the same facts and the same propositions of law, and differ only in the form of the desired remedy.

The following facts appear in the agreed statement:

The Crawford Electric Company was organized under the general laws of the State on February 20, 1897, for the purpose of making, generating, selling, distributing and supplying gas or electricity, or both, for lighting, heating, manufacturing and mechanical purposes in various towns in Knox and Waldo counties, including the town of Union.  It is the owner of buildings and water power in South Union purchased with a view to carrying out its chartered purposes, but has neither furnished electricity nor installed apparatus for that purpose.

In 1911 the Knox County Power Company was also organized under the general law for the same general purposes in the same towns, but has taken no steps to carry the same into effect, and in its answer denies that it intends in any way to perform any of the purposes of its incorporation.

On November 8, 1911, Hollis M. Shaw, the other defendant, was granted, by the municipal officers of the town of Union, a permit to erect poles and string wires in all the streets and highways of the town for the purpose of lighting streets, ways and buildings and selling electricity for any and all purposes; and, being the owner of a water power, has since constructed an electrical plant and system, is occupying some of the public ways with his poles and wires, is "holding himself out as conducting an electric light and power plant and business in the town of Union, for supplying all who may wish to purchase the same, as any corporation organized for that purpose might do, and is supplying the public and individuals with electricity for lighting at a fixed tariff."

Neither the Crawford Electric Company, nor the Knox County Power Company, nor Hollis M. Shaw, has any rights granted specially by the Legislature.

Under the answer of the Knox County Power Company disclaiming all intention to carry out its chartered purposes, and in the absence of any evidence to the contrary, it is not seriously contended by the plaintiff that an injunction should issue against that corporation. The bill should therefore be dismissed as to the Knox County Power Company.

But upon the foregoing statement of facts, the plaintiff claims that both the bill and the quo warranto proceedings should be sustained against Hollis M. Shaw.

This sharply raises the question whether a corporation, organized under the general law, and having by its charter the right to supply electricity in a town, but never having exercised that right although existing for a period of fifteen years, can prevent an individual, who has a permit from the municipal officers, from maintaining his system in the public ways of the town and carrying on the general business of furnishing electricity for lighting, heating and mechanical purposes.

It is our opinion that this question must be answered in the negative, and that the injunction prayed for should not be granted.

As between two corporations, the vested rights of the one first authorized are protected to a certain extent by statute. R. S., Chap. 55, Sec. 1, provides that "corporations for the purpose of making, generating, selling, distributing and supplying gas or electricity or both for lighting, manufacturing or mechanical purposes" . . . may be organized under the general law. "But no corporation, so organized, shall have authority, without special act of the Legislature, to make, generate, sell, distribute or supply gas or electricity, or both, for any purpose, in or to any city or town, in or to which another company, person or firm are making, generating, selling, distributing or supplying, or are authorized to make, generate, sell, distribute or supply gas or electricity or both."

To illustrate: Had the Knox County Power Company attempted to exercise its chartered purposes in the town of Union, without authority therefor conferred by a special act of the Legislature, the plaintiff corporation as the one already authorized to carry on the same business, could have successfully asked for an injunction, even though it had not itself actually been engaged in the business. Authority in one company to supply gas or electricity, or both, in a certain territory, is prohibitive of the right of another company to supply either in the same territory unless by consent or by special legislative authority. *Twin Village Water Co.* v. *Damariscotta Gas Light Co.,* 98 Maine, 325.

But such a prohibition does not extend to an individual. The statute is confined to corporations subsequently organized under the general law and without express legislative authority.

It is just at this point, however, that the plaintiff invokes the remedy of quo warranto in the name of the State, on the ground that Mr. Shaw is usurping two public franchises, one in supplying a public utility, and the other in occupying the public streets and ways of Union with his poles and wires. On the same grounds and independent of any statutory prohibition, the plaintiff insists upon its remedy by injunction.

These contentions on the part of the plaintiff raise the issue whether a private individual, without special legislative authority, has the legal right to generate and sell electricity for public and

private purposes and to light the streets of a town provided he has a legal permit from the municipal officers to erect and maintain his system of poles and wires along the public highways.

The plaintiff's position, reduced to a syllogism, is this:

(1). An individual has no legal right, without special permission or authority, to exercise any privileges or functions belonging solely to sovereignty and which are usually called franchises.

(2). To supply electricity for public and private purposes, charging therefor, and to occupy the streets of a town with poles and wires is a privilege belonging solely to sovereignty.

(3). The defendant Shaw is so supplying and occupying and therefore is usurping a public franchise and has no right to continue in the usurpation.

The fallacy lies in the minor premise. The word "franchise" has been defined in various terms, and with greater or less precision. Not infrequently, the courts have differed in their views of what a franchise, speaking discriminatingly, is, and have confused mere rights and powers, which belong to corporations and individuals alike, with franchises which inhere in and must emanate from sovereignty alone.

For instance, the corporation itself is often termed a franchise. "A corporation is itself a franchise belonging to the members of the corporation, and a corporation, being itself a franchise, may hold other franchises, as rights and franchises of the corporation." *Pierce* v. *Emery*, 32 N. H., 484, 507. "The right to be and to do business as a corporation is a franchise. The power to exercise such a franchise is one of the most important a corporation can acquire." *Iron Silver Min. Co.* v. *Cowie*, 31 Colo., 450; 72 Pac., 1067. The same definition is applied in *Cedar Rapids Water Co.* v. *Cedar Rapids*, 118 Iowa, 234; 91 N. W., 1081.

On the other hand, in Wood on Railroads, 2nd Ed., Vol. 1, Sec. 13, the learned author says: "The corporation itself is not a franchise, but it is the attributes of the corporation which comprise the franchises thereof, its special powers and rights." This definition is adopted in *Young* v. *R. R. Co.*, 75 Iowa, 140; 39 N. W., 234. "The right of forming a corporation and of acting in a corporate capacity under the general incorporation laws, can be called a franchise only in the sense in which the right of forming a limited partner-

ship, or of executing a conveyance of land by deed, is a franchise."
2 Mor. Priv. Corp., Sec. 923; *State* v. *Canal Co.,* 40 Kans., 96, 19
Pac., 349.

The conflict, however, may be one of terms rather than of
essence, and more apparent than real. A satisfactory reconciliation
may be found in *State* v. *Topeka Water Co.,* 91 Kans., 547, 60 Pac.,
337, 341, where the court notes the distinction as follows: "There
is a marked distinction between a franchise which is essential to the
creation and continued existence of a corporation, a right to exist
as an artificial being, a right conferred by the sovereignty of the
State, and those rights, subsidiary in their nature, by which the
corporation obtains privileges of more or less value, to the enjoy-
ment of which corporate existence is not a prerequisite. . . .
The rule is that the primary franchise of being a corporation vests
in the individuals who compose it and not in the corporation itself,
while the secondary franchises, such as the right of a railway to
construct and operate its road, or the right to operate a water plant
and collect water rates, are vested in the corporation." The same
important distinction is expressed in *Central Trust Co.* v. *Western
N. C. R. Co.,* 89 Fed. Rep., 24, in these words: "This sovereign
power made of several persons an entity and conferred on them
the franchise of acting as one person. This new person, creature
of the law and existing through the grace and at the will of the
sovereign, was then clothed with certain powers and granted certain
privileges. These are its franchises: First, the franchise of exist-
ence as a corporation,—its life and being. This is inseparable from
it. When it parts with it, with this franchise, it parts with its life.
But with respect to the other franchises with which it has been
clothed, the right and privilege to act as a common carrier, to carry
passengers and goods, to charge tolls, to operate a railroad, these
it enjoys as an individual could and they are not inseparable from
its existence. They are its property. A franchise to be a corpora-
tion is distinct from a franchise as a corporation to maintain and
operate a railroad."

This distinction between the primary and the secondary fran-
chise, or as it might with greater accuracy be termed, between a
franchise and a power, should be kept clearly in mind. The crea-
tion of the corporation is a franchise. Once created, it exists as an

entity along side natural persons.  But without being granted additional powers, the corporation cannot exercise the rights of natural persons, for it can exercise no powers that have not been conferred upon it.  It is purely the creature of statute.  These additional rights are often called franchises, but they should more properly be termed powers; and when conferred, the corporation has in many cases the same powers possessed by the natural person without a special grant,—no more, and no higher.

Our own court has marked the distinction clearly and emphatically.  "A distinction between franchises and powers should not be overlooked.  A 'franchise,' given by Finch, adopted by Blackstone, and accepted by every authority since, is 'a royal privilege or branch of the King's prerogative existing in the hands of a subject.'  To be a franchise, the right possessed must be such as cannot be exercised without the express permission of the sovereign power,—a privilege or immunity of a public nature which cannot legally be exercised without legislative grant.  It follows that the right, whether existing in a natural or artificial person, to carry on any particular business, is not necessarily or usually a franchise.  The right given to this corporation to furnish electric light and power, aside from the right of eminent domain, authorized a business which was open to any individual, without special legislative grant, and falls within the definition of powers."  *State* v. *Twin Village Water Co.,* 98 Maine, 214, 230.  See also *State* v. *Minn. Thresher Mfg. Co.,* 40 Minn., 213; 3 L. R. A., 510.

This language is most significant, and pricks the fallacy in the minor premise of the plaintiff's argument.  The right to furnish electric light and power is not a sovereign privilege but a business, which is "open to any individual without special legislative grant."

The learned counsel for the plaintiff contends that the right to do a business of a public service corporation, whether done by a corporation or by an individual, is a franchise.  This definition we cannot adopt.  The mere fact that an individual is exercising a power that is often conferred upon a public service corporation to exercise does not raise that power to a franchise and make it an essence of sovereignty.  The right that must be expressly conferred upon an artificial person may be and often is but the inherent right of a natural person.

Thus, R. S., Chap. 47, provides for the organization of corporations to carry on, broadly speaking, any lawful business, excepting banking, insurance and railroads. Under these provisions, a great variety of business corporations have been organized with such chartered rights and powers as were deemed necessary to carry out their purposes. But the fact that a corporation has been formed to carry on the wholesale or retail grocery business does not convert that power into a franchise so that an individual may not engage in the same business without any legislative grant.

Transportation is more commonly carried on by corporations with chartered powers, but the field is open to individuals if they see fit to engage in the business of a common carrier, with all its attendant duties and liabilities. Thus, individual proprietors of a stage coach, as in *Bean* v. *Greene,* 12 Maine, 422; *Keith* v. *Pinkham,* 47 Maine, 501; *Edwards* v. *Lord,* 49 Maine, 279; or of a steamboat, as in *Abbot* v. *Bradstreet,* 55 Maine, 530.

In like manner, R. S., Chap. 55 provides that telegraph, telephone, gas and electric light and power companies may be organized like business corporations under the provisions of Chap. 47, and when so organized may construct and maintain their lines along and upon the roads and streets of the various towns covered by their charter, after obtaining a permit therefor from the municipal officers.

But, adopting the same analogy, this does not convert the powers so granted into a franchise, so that no private individual can exercise the same, provided he secures a permit from the municipal officers. There is nothing pertaining solely to sovereignty in the selling of electricity for lighting purposes. Though differently measured, it is as much a commodity as kerosene, and we can see no reason why natural as well as artificial persons should not be allowed to deal in it.

In *Jersey City Gas Co.* v. *Dwight et als.,* 29 N. J. Eq., 242, an injunction was granted against the defendants, not on the ground that they were individuals engaged in the gas business, but because they had failed to secure any permit from the proper authorities for the use of the streets. Upon the former point, the court say, "The business of manufacturing and selling illuminating gas is not a prerogative of government; like the manufacture and sale of any

other ordinary article of traffic, it is open to all and may be carried on by any person without legislative authority. Any one of the defendants, in point of right and privilege, is the equal of the complainants in this respect."

In *Norwich Gas Light Co.* v. *The Norwich City Gas Co.*, 26 Conn., 18, the same idea is expressed as follows, "The business of manufacturing and selling gas is an ordinary business, like the manufacture of leather or any other article of trade, in respect to which the government has no exclusive prerogative."

See also, *Purnell* v. *McLane*, 98 Md., 589; 56 Atl., 830.

In recognition of this right in individuals to engage in the business of selling and distributing gas or electricity or water or transportation, a permit to an individual to use the streets of a city for the construction and operation of a street railway was held valid in *Watson* v. *Fairmont R'y. Co.*, 49 W. Va., 528, 39 S. E., 193, approved in *Hardman* v. *Cabot*, 69 W. Va., 664, 9 Am. & Eng. Ann. Cases, 1030.

The statutes of this State, under which the defendant Shaw is proceeding, expressly recognize the right against which the plaintiff is contending.

In 1885, by Chap. 378 of the Public Laws, the Legislature regulated the erection of poles and wires which act has become R. S., Chap. 55, Sec. 16-24. Section 16 reads, "Every company incorporated for the transmission of intelligence, heat, light or power by electricity, and all persons and associations engaged in such business, shall be subject to the duties, restrictions and liabilities prescribed in the following sections." Then follow the provisions relating to obtaining a written permit from the municipal officers, and in each section the words "persons" and "associations" are coupled with the word "company;" and persons and associations are given precisely the same rights, so far as permits are concerned, as are conferred on incorporated companies.

The Legislature, by virtue of its control over the public roads and ways of the State, may expressly grant to a person or corporation authority to erect its lines along and upon such roads and ways, or it may delegate that power to the municipal officers of the several towns, as has been done by the act of 1885, just referred to. *Readfield Telephone Co.* v. *Cyr*, 95 Maine, 287. That, however, is,

strictly speaking, a power and not a franchise, and can be exercised as well by an individual as by a corporation. This statute expressly confers the powers upon both through the medium of the municipal officers, and in the case at bar such a permit was granted to the defendant Shaw by the municipal officers of Union.

Te case of *Haines, Atty. Gen'l* v. *Crosby,* 94 Maine, 212, involved practically the same elements as are present here. The plaintiff corporation had been organized under the general laws of the State, and was carrying on a public telephone business in the western part of Kennebec County. The defendant built at first a private telephone line for his own convenience, but finally extended it so as to carry on a general public telephone business in a portion of the territory covered by the plaintiff, practically duplicating a portion of the plaintiff's line. The plaintiff sought to enjoin the defendant from operating his line, relying upon the same anti-competition statute of 1895 which is invoked here, and which at that time applied to telephone companies. The court held that the statutory prohibition did not extend to the individual action of the defendant, and refused the injunction. There, as here, the defendant was a private person; there he was engaged in the public service of the telephone, here of electric lighting. Neither had any grant from the Legislature; both had permits from the municipal officers. If Shaw is usurping a public franchise in the case at bar, Crosby was guilty of the same usurpation in the case cited. This court, in the former case, left the defendant Crosby undisturbed in the exercise of his natural and legal rights; and in the case at bar, it is our opinion that neither the plaintiff by injunction nor the State by quo warranto can prevail against the defendant Shaw.

The entries must therefore be,

> *Bill in equity dismissed with costs for each defendant.*
> *Information dismissed without costs.*
>
> *So ordered.*