PUBLIC SERVICE RAILWAY COMPANY

*v.*

WILLIAM J. BANKER, JR.

PUBLIC SERVICE RAILWAY COMPANY

*v.*

ISADORE BARNETT.

PUBLIC SERVICE RAILWAY COMPANY

*v.*

WILLIAM D. REINHARDT.

[Decided December 5th, 1921.]

On appeals from decrees of the court of chancery advised by Vice-Chancellor Griffin, whose opinions are reported in *92 N. J. Eq. 365, 372.*

*Mr. Frank Bergen* and *Mr. Robert H. McCarter,* for the appellant.

*Mr. Merritt Lane* and *Mr. George F. Seymour, Jr.,* for the respondent.

PER CURIAM.

The court being equally divided upon the question whether there shall be an affirmance or a reversal, the decrees appealed from will be affirmed.

*For affirmance*—SWAYZE, TRENCHARD, PARKER, KALISCH, BLACK, WHITE, ACKERSON—7.

*Fo reversal*—THE CHIEF-JUSTICE, BERGEN, MINTURN, KATZENBACH, HEPPENHEIMER, WILLIAMS, GARDNER—7.

In these cases the following opinions were filed:

MINTURN, J.·

I dissent from the views of the learned vice-chancellor in the court below for the following reasons:

The bill was filed by a legally constituted street railway company, operating under a legislative franchise, as a common carrier of passengers, on the streets of Newark, Elizabeth and Perth Amboy, to enjoin the defendants from illegally interfering with its charter rights. It charges that the defendants have not procured the prescribed municipal consent to operate jitney buses upon the streets of such cities, and that they are operating such buses and collecting fares for the transportation of passengers in competition with the complainant, and that such operation is therefore unlawful in character, a nuisance, and "a detriment to the complainant's business; diminishes its revenues, and is a hindrance to the performance and discharge of its public obligations and is otherwise contrary to equity and good conscience."

The bill was met with a motion to strike out, equivalent to a demurrer, under the older practice, upon various grounds of equitable informality, but also upon the substantial ground that the complainant was endeavoring to perpetrate an exclusive right in the streets, tantamount to a monopoly, and that "if in fact defendant is operating without complying with said law, no right of complainant remediable in equity is offended thereby." Testimony was taken *pro* and *con* upon the allegations of the bill, and the averments in the notice to strike out, but when the hearing was had the learned vice-chancellor, basing his determination upon *Camden Horse Railroad Co.* v. *Citizens Coach Co., 81 N. J. Eq. 525; Elizabethtown Gas Light Co.* v. *Green, 46 N. J. Eq. 118,* and *Jersey City Gas Light Co.* v. *Dwight, 29 N. J. Eq. 242,* held that the complainant "has no standing in this court to ask for injunctive relief."

The practical result of this determination is to reduce the argument to the single inquiry whether the complainant, as the owner of a street franchise, possesses a legal status, sufficiently comprehensive to protect its property from illegal invasion.

From this aspect of the question our determination must prove as important in its results to the legally authorized jitneur as it can to this complainant, for, in both instances, the question involved is one of wrong doing against a legally authorized concern, doing business under a legislative grant.

In discussing the question, therefore, it is obvious that we are not concerned with the relative rights of a legally authorized company or jitneur,.engaged in a competitive business, but solely within the fundamental inquiry whether the legal status of the complainant presents a basis for an appeal to a court of equity, to protect its property rights against one occupying no higher legal status than that of a tort-feasor or a trespasser.

The answer to this inquiry is necessarily involved in the inquiry as to the nature of the right which the complainant is seeking to enforce. Is it a property right? If it is, the rule in this branch of jurisprudence is settled beyond the pale of reasonable forensic controversy that as against a usurpation of the right or a trespass upon it, the complainant is warranted in appealing for that injunctive protection, which equity alone in such an exigency can confer.

In *12 R. C. L. 175*, we find it stated that "in character and nature, a franchise is essentially in all respects property, and is governed by the same rules as to its enjoyment and protection, and is regarded by the law precisely as other property." *City Tax Appeal Cases, 3 How. (U. S.) 133; Telephone Cases, 230 U. S. 58.* Mr. Justice Lurton, in the latter case, observed: "That an ordinance granting the right to place poles and wires upon the streets of a city is the granting of a property right, has been too many times decided by this court to need more than a reference to some of the later cases. As a property right it was assignable, taxable and alienable. Generally, it is an asset of great value to such utility companies and a principal basis for credit."

In *Boise Artesian Co. v. Boise City, 230 U. S. 84,* the same learned justice, discussing the nature of a grant for the construction of a water distributing system in the public streets, again observed: "The right which is acquired under an ordinance granting to a water company the right to lay its pipes in

the streets is a substantial property right. It has all the attributes of property. It is assignable and will pass under a mortgage sale of the property and franchises of the company which owned it."

In *Piscataqua Bridge Co.* v. *New Hampshire Bridge Co., 7 N. H. 68,* it was declared that "the grantees of such a public franchise are entitled to be protected in the enjoyment of the property acquired under it to as great an extent as they are protected in the enjoyment of any other species of property."

In *Newark* v. *State Board of Taxation, 67 N. J. Law 246,* this court, speaking by the present chief-justice, declared that "a franchise to maintain and operate a street railway over public highways and collect tolls from persons traveling upon it, is property, and is taxable as such," following *State Board of Assessors* v. *Central Railroad, 48 N. J. Law 146.*

In *Raritan and Delaware Bay Railroad Co.* v. *Delaware and Raritan Canal Co., 18 N. J. Eq. 546,* this court, in 1867, by Chief-Justice Beasley, with his usual lucidity, declared that "a franchise to build a railroad for public use and to take tolls is property, the title to which is held from the sovereign, and like every other thing susceptible of private ownership, it must of necessity be under the protection of the laws. Unless it can be shown that this species of right is altogether anomalous in its character, and is under the control of exceptional rules, a wrongful invasion of such right cannot but be followed by a legal vindication."

Conceding, as we must, under this wealth of legal authority, that the status of this complainant is that of a property owner, exercising its right of operation under the sanction of a sovereign grant for public purposes, the question presents itself whether the portals of equity are open to it for the purpose of protecting the grant against the invasion, not of a legally authorized competition but of a conceded trespasser and tort-feasor.

In *Willard Eq. Jur. 405,* the rule is declared that

"Courts of equity by injunction interfere to protect individuals in the enjoyment of a franchise created by statute; and it may be added that an injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it by attempting to participate in its exclusive privileges." Citing *Osborn* v. *United States Bank, 9 Wheat. 738.*

In the case of *Newburgh Turnpike Co.* v. *Miller, 5 Johns. Ch. 101,* Chancellor Kent enjoined a turnpike or free road company, operating without authority of law, from further interference with the legally constituted turnpike company, declaring "that the rules of the common law relating to ferries, fairs, markets and toll bridges were applicable to any similar privileges created by statute."

Upon another occasion the same learned authority declared "all grants or franchises ought to be so construed as to give them due effect by excluding all contiguous competition which would be injurious and operate fraudulently upon the grant." *12 R. C. L. 197.*

In the *Delaware Bay, &c., Railroad Case, supra,* Chief-Justice Beasley declared such an illegal invasion of a public grant to be "a fraud upon such grant and a plain public nuisance." He determined the question involved here by this practical and comprehensive inquiry and answer: "Has a railroad company any redress against a competition unwarranted by law, and which materially affects the value of the privileges with which it is legally vested? I am at a loss to perceive upon what premise or by what course of reasoning other than an affirmative answer to this question could be justified." That determination during the interim of half a century remained unchallenged and unquestioned, and has received the approval of some of the most distinguished chancery judges of our time.

In *Camden Horse Railroad Co.* v. *Citizens Coach Co., 31 N. J. Eq. 531,* Chancellor Runyon declared "that the complainant is entitled in equity to protection in the exercise of its franchises, not only against unlawful competition, but against unlawful obstruction cannot be doubted."

In *Elizabethtown Gas Light Co.* v. *Green, 46 N. J. Eq. 123,* Vice-Chancellor Van Fleet declared: "It is also established that a court of equity has power to protect a corporation holding an exclusive franchise from irreparable injury arising from the usurpation of a like franchise, whether the usurpation be committed by natural or artificial persons."

30

The same learned vice-chancellor in *Jersey City Gas Co.* v. *Dwight, 29 N. J. Eq. 250,* characterized the illegal acts involved here as a "fraud and an unwarrantable usurpation of power," and thus presenting an obvious basis for equity intervention.

It is argued, however, that to be recognized as a suitor in good standing in a court of equity, the complainant, unlike other suitors, must present what is termed an absolute or exclusive right to operate its franchise upon the public highway. Manifestly, it might be answered, that as a recognized legal corporate entity, possessing at least relative rights with the rest of the business community, it must occupy a status equal with other owners of property, who frequently seek and obtain upon the filing of the bill the injunctive process of equity to prevent unlawful interference with the legitimate prosecution of their business. But, obviously, that contention may be waived and the objection may be answered by the assertion that the right of the complainant in this case to conduct its business as a street railway, is an exclusive franchise as against every one excepting the state; and it assuredly must possess all the attributes of such a franchise as against a tort-feasor, which is the only inquiry presented by this record.

It is not contended that as against the state under its reserved power other forms and methods of transportation may not be inaugurated and utilized as progress and public necessity may require. *Charles River Bridge* v. *Warren River Bridge, 11 Pet. 420.*

But such a contention cannot be invoked by a mere trespasser, whose hands are soiled with usurpation, and who in defiance of the provisions of the law recognizing and regulating his business, raises this question against a legitimate state agency.

This complainant as an agent of the state is in possession of and operating a public franchise. "What is a franchise?" inquires Mr. Justice Bradley in *California* v. *C. P. R. R., 127 U. S. 1,* referring to a public franchise to operate a railroad. He defines it thus: "Under the English law Blackstone defines it as a royal privilege or grant of the king's prerogative, subsisting in the hands of the subject. Generalized and divested of the

special form which it assumes under a monarchical government, based on feudal traditions, a franchise is a right, privilege or power of public concern which ought not to be exercised by private individuals, at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly or by public agents acting under such conditions and regulations as the government may impose in the public interest and for the public security." See, also, *C. P. R. R.* v. *California, 162 U. S. 91.*

Such a concession is a grant *pro tanto* of the powers of sovereignty, which cannot be usurped by another without legislative authority, and to that extent every concession of a public nature by the sovereign power becomes *jus publicum*, and is absolute and exclusive in character. *Driscoll* v. *N. W. Ry. Co., 65 Conn. 220; Twelfth Street Co.* v. *Philadelphia Railway Co., 142 Pa. St. 580; 18 Cyc. 1463.*

"Of course," said the learned editor in *12 R. C. L. 196,* "the grant with exclusive privileges of a right appertaining to the government is a very different thing from a grant with exclusive privileges of a right to pursue one of the ordinary trades or callings of life which is a right appertaining solely to the individual. It is the duty of the government to provide suitable roads, bridges, ferries and other utilities for the convenience of the public, and if it chooses to devolve this duty to any extent, or in any locality, upon particular individuals or corporations, it may stipulate for such exclusive privileges connected with the franchise as it may deem proper without encroaching upon the freedom or the just rights of others." *New Orleans Gas Co.* v. *Louisiana Co., 115 U. S. 650; Indianapolis Street Railway Co.* v. *Citizens Railroad Co., 127 Ind. 369; Montgomery Gas Co.* v. *Montgomery, 87 Ala. 245.*

In consonance with this general doctrine, it was declared by the superior court of California that "franchises are necessarily exclusive in their character; otherwise their value would be liable to be destroyed or seriously impaired. And even though the grant does not declare the privilege to be exclusive, yet that is necessarily implied from its nature." *California State Tel. Co.* v. *Alta Co., 22 Cal. 398.*

It is not disputed that in the absence of the exercise of legislation providing for a license, and cognate regulations, as conditions precedent to transacting business, any person may engage in the business of transportation, and assume the duties of a common carrier upon the highways, subject to local regulation. *Cranford El. Co.* v. *Knox Co. Power Co., 110 Me. 285; 33 A. & E. Ann. Cas. 933; Magee* v. *Overshiner, 150 Ind. 127.*

That question, however, is not involved here, since the state having entered the arena of licensing and regulation, has prescribed the conditions under which the business may be carried on, as to the complainant by the provisions of its respective subsidiary charters, and as to the defendants by the provisions of the so-called Jitney act.

Manifestly, therefore, the complainant occupies a legal status which entitles it, as any other suitor, to present its grievances to a court of law or of equity and obtain a hearing.

The result is that the decree appealed from will be reversed, to the end that the court of chancery may hear and determine the case upon its merits.

I am requested to state that the chief-justice, Mr. Justices Bergen, Katzenbach and Judges Heppenheimer, Williams and Gardner concur in these views.

Swayze, J.

I favor affirmance in this case because I think we are controlled by the opinion in *Elizabethtown Gas Light Co.* v. *Green, 46 N. J. Eq. 118.* This opinion was affirmed and has been acted upon by the courts ever since 1889. One of the fundamental propositions, to be found on page 129 of the report, is, that until it is made clearly to appear that the condition in question was imposed in favor of the complainant, or for its benefit, so that it has a clear right to demand its observance, the complainant's position with respect to the condition is that simply of a stranger, and hence it stands without the least pretence of right to complain of its breach. "It is only the parties to a grant made subject to conditions or those in whose behalf or for whose benefit these conditions are imposed that have a right to ask that they

shall be performed or to seek protection against their breach or redress for their violation."

In that case, although it was conceded that the acts of the defendants were without legal authority, and although they were obviously to the injury of the complainant in the exercise of its franchise rights, nevertheless, relief was denied because the complainant was not mentioned in the charter of the competing company, and the charter contained no word or sentence which by the most lax construction would support even a conjecture that the condition under consideration was imposed for the benefit or protection of the complainant. The purpose of the condition in question in that case, said the court, was to protect such persons as should become creditors of the Metropolitan company. This view was approved by this court. *Elizabethtown Gas Light Co. v. Green, 49 N. J. Eq. 329.*

Unless we can find in the case now under consideration something to indicate that the requirement of bonds from the jitney companies was meant for the benefit of the complainant, relief cannot be granted. So far from finding that it was the legislature's intention to give the complainant any additional rights, it is quite clear that the legislature, both in 1916 and in 1920 (*P. L. 1916 p. 283; P. L. 1920 p. 182*), when it required the jitney companies to give bonds, meant to retain the control and enforcement of the matter within the municipality for the benefit of the general public having the right to use the streets and subjected to the danger arising from the running of the jitneys therein. We ought not to resort to what is at least a doubtful, even if permissible, construction, to increase the corporate powers of the complainants, especially since the act of 1916 was passed in full knowledge of the decision in *Elizabethtown Gas Light Co. v. Green, supra,* and such a liberal construction of corporate powers is against the well-settled rule.

The case is very different from the *Camden Coach Co. Case,* where there was a direct interference with the rails and tracks of the street railway company.

Mr. Justices Trenchard, Parker, Kalisch and Black and Judges White and Ackerson concur in this view.