[Crim. No. 282.    Third Appellate District.—December 2, 1914.]

In the Matter of the Application of J. C. SMITH for a Writ of Habeas Corpus.

MOTOR VEHICLE ACT—CONSTRUCTION OF—LIMIT OF SPEED.—The Motor Vehicle Act of 1913 (Stats. 1913, p. 639) provides, among other things, that no motor vehicle shall be operated at such rate of speed as to endanger the life or limb of any person or the safety of any property, which provision is independent of the provision fixing certain maximum speeds; and the act then fixes the maximum rate of speed generally, i. e., in sparsely settled portion of the county, at thirty miles an hour; where the contiguous territory is closely built up, at twenty miles an hour; in business districts of any incorporated city and county, city or town, at fifteen miles per hour; and finally where the operator's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in approaching or traversing a bridge, dam, trestle, causeway, or viaduct, in going

around corners or a curve in a street or highway, at ten miles per hour.

ID.—PROVISION FOR DIFFERENT RATES OF SPEED IN CITIES AND TOWNS—POWER OF STATE.—The Motor Vehicle Act very properly provides for different speeds at different places and under different conditions in incorporated cities and towns for the obvious reason that where "the view of the road traffic is obstructed upon approaching an intersecting way," also when "traversing a crossing or intersection of ways," also "when approaching a bridge, dam, trestle, or viaduct," also "in going around corners or a curve in a street or highway," the danger to life and property is increased in proportion as the speed is increased; and it follows that any reasonable rate of speed deemed necessary for the protection of life and property may be prescribed by the state as within its police power.

ID.—CONSTRUCTION OF ACT—UNIFORM REGULATION IN CITIES AND TOWNS. The Motor Vehicle Act was intended to provide uniform regulations to govern all persons in operating motor vehicles in incorporated cities and towns unless it may be where some exceptional conditions in such cities and towns demand a lower rate of speed and in some parts thereof than is prescribed by the state law and such conditions clearly appear.

ID.—OBJECT OF ACT—RAISING OF REVENUE.—The Motor Vehicle Act has for its object the regulation of the licensing and operating motor vehicles and the raising of revenue for the improvement of the state highways.

ID.—HIGHWAY ACT OF 1909—MOTOR VEHICLE ACT SUPPLEMENT OF.—The Motor Vehicle Act is intended in no small degree to supplement the Highway Act of 1909, for it deals with and regulates the speed of vehicles over all the highways and all the streets in the state whether within or without incorporated cities and towns.

ID.—NOTICES—LOCAL AUTHORITIES—REGULATION OF SPEED.—The direction given in the Motor Vehicle Act "to local authorities" to post notices requiring persons using the street "to slow down——miles," does not authorize municipalities to insert therein the speed prescribed by the municipality and allow a different rate of speed from that prescribed in the act and punish the person who exceeds it.

ID.—REVENUE AND REGULATION—COLLECTION OF FINES—INTERFERENCE WITH STATE BY MUNICIPALITIES.—The Motor Vehicle Act is essentially a revenue law as well as a regulatory measure; and to allow incorporated cities and towns unrestricted authority to impose and collect fines for municipal purposes would tend to defeat one of the objects of the act, for it is common knowledge that most of the prosecutions for the infractions of speed regulations arise within incorporated cities and towns.

ID.—MUNICIPAL CORPORATIONS—REGULATION OF SPEED OF MOTOR VEHICLES—CONFLICT WITH MOTOR VEHICLE ACT.—An ordinance of the city of Merced which fixes the limit of speed of motor vehicles in

all parts of the city at twelve miles per hour, regardless of crossings and intersecting streets or of obstructions to the view of the operator in approaching /an intersecting way, is in conflict with the Motor Vehicle Act of 1913 which limits the speed to ten miles an hour under certain conditions and allows fifteen miles per hour under other circumstances.

ID,—STREETS AND HIGHWAYS—RIGHT OF STATE TO REGULATE.—Except as to "municipal affairs" concerning which cities having freehold charters (Merced is not among them) are, by the constitution, given exclusive authority to pass ordinances, and except where the state has relinquished control to municipalities, the state in its sovereign capacity has the original right to control all public streets and highways, which carries with it the power to make regulations for the use of streets in incorporated cities and towns. This control the state has not relinquished.

ID.—CITY OF SIXTH CLASS—AUTHORITY OF.—Merced, which is a city of the sixth class, has authority to go no further than to make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with the general laws; and where an ordinance of that city attempting to regulate the speed of motor vehicles may be said to conflict with the Motor Vehicle Act or if said act can reasonably be held to have intended to supplant all other legislation, state and local, with regard to the subject-matter of the act, the ordinance is invalid.

ID.—CONFLICT BETWEEN ORDINANCE AND STATE LAW—RULE AS TO.— There may be a conflict where an act of the legislature follows as well as where it precedes a local ordinance; and it is immaterial how or when the conflict arises if at the time of the alleged violation the ordinance is in conflict with the existing general law.

APPLICATION for Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

L. J. Schino, for Petitioner.

U. S. Webb, Attorney-General, and John T. Nourse, Deputy-Attorney-General, *Amici Curiae*, in support of the State Motor Vehicle Act.

F. W. Henderson, for Respondent.

CHIPMAN, P. J.—Petitioner was convicted of the offense of misdemeanor for violating the speed limit prescribed by ordinance of the city of Merced for automobiles, and was sentenced to pay a fine of twenty dollars and if not paid that he

be imprisoned in the county jail until said "fine be duly satisfied, in proportion to one day's imprisonment for every two dollars of the fine." Failing to pay his fine, the petitioner was committed to the sheriff of the county and it is from such commitment he seeks to be discharged.

It was charged in the complaint "that said J. C. Smith, on or about the fourth day of September, A. D. 1914, at Merced City, in the county of Merced, state of California, did willfully and unlawfully drive an automobile over the streets of Merced City at a greater rate of speed than twelve miles an hour."

Merced is a city of the sixth class with a population of about three thousand persons. For the purposes of the case, it was conceded at the hearing that at the time of his arrest petitioner was not exceeding the speed limit prescribed by the state law in the section of Merced where he was then traveling, but it does not appear upon what part of the street or in what part of the city he was traveling.

Ordinance No. 151 of the city of Merced, by section 14, provides as follows: "No vehicle shall be allowed to be driven or run over the streets in the city of Merced at a greater rate of speed than twelve miles an hour" and section 22 makes it a misdemeanor to violate any of the provisions of the ordinance, punishable by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days, or both, and in case the fine be not paid, "by imprisonment at the rate of one day for every two dollars of the fine so imposed." This ordinance was passed on January 2, 1911.

The Motor Vehicle Act of 1913 (Stats. 1913, p. 639) is declared by its title to be "An act to regulate the use and operation of vehicles upon the public highways, and elsewhere (enumerates many other purposes, such as: payment of registration fees, licensing persons operating motor vehicles, providing penalties for violating the provisions of the act, and the disposition of registration and license fees, fines and forfeitures) . . . and to repeal all other acts either in conformity or in conflict with this act." Some of the provisions of the act are as follows:

"Section 22. . . . (b) Every person operating or driving a motor or other vehicle on the public highways of this state shall operate or drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to traffic and use of the highway, and no person shall operate or drive a motor or other vehicle on a

public highway at such rate of speed as to endanger the life or limb of any person or the safety of any property; *provided,* that it shall be unlawful to drive at a rate of speed in excess of thirty miles an hour; *and provided, further,* that in any event no person shall operate or drive a motor or other vehicle on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than one mile in three minutes, or in the business district of any incorporated city and county, city or town, at a greater rate than one mile in four minutes, or at a greater rate of speed than one mile in six minutes where the operator's or chauffeur's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in approaching or traversing a bridge, dam, trestle, causeway or viaduct, or in going around corners or a curve in a street or highway.''

Section 1 reads in part, as follows: '' . . . (4) 'public highways' shall include any highway, county road, state highway or state road, public street, avenue, alley, park, parkway, driveway, or public place in any county or incorporated city and county, city or town;

''(5) 'business district' shall mean the territory of any county or incorporated city and county, city or town, contiguous to public highway, which is at that point mainly built up with structures devoted to business;

''(6) 'closely built up' shall mean the territory of any county or incorporated city and county, city or town, contiguous to a public highway not devoted to business where for not less than a quarter of a mile, the dwelling-houses on such highway average not less than one hundred feet apart; provided, that the local authorities having charge of such highway shall have placed conspicuously thereon at both ends of such closely built up section signs of sufficient size to be easily readable to a person using the highway, bearing the words 'Slow down to —— miles' (inserting in the blank space preceding the word 'miles' the rate of speed prescribed by law and also an arrow pointing in the direction of the territory where the speed is to be reduced);

''(7) 'Local authorities' shall include all boards of supervisors, trustees or councils, committees, and other public officials of counties, incorporated cities and counties, cities or towns; . . .

"(15) 'intersecting highway' shall mean any highway which joins another at an angle, whether or not it crosses the other. . . .

"Section 32.   Excepting as in this act otherwise expressly provided, any person violating any of its provisions shall be deemed guilty of a misdemeanor, and upon conviction thereof unless in this act otherwise expressly provided, shall be punishable by a fine not exceeding one hundred dollars or by imprisonment not exceeding thirty days, or both, for the first offense; and punishable by fine of not less than fifty dollars, nor more than one hundred dollars, or imprisonment not exceeding thirty days, or both, for a second offense; and punishable by a fine of not less than one hundred dollars nor more than two hundred and fifty dollars, or imprisonment not exceeding thirty days, or both, for a third or a subsequent offense."

Section 36 provides for the payment of all fines and forfeitures to the treasurer of the county where collected who shall, "at intervals of not greater than once a month place such moneys in a fund to be called the 'County good road fund' or 'City and county good road fund,' as the case may be, which shall be used by the highway commission of the county or city and county, as the case may be, or by the board of supervisors . . . for the construction, improvement, maintenance and repair of such roads as shall be designated . . . with regard to the proper and just distribution of the benefits of this act throughout the county or city and county."

"Section 40.   This act shall be known and cited as the 'Motor Vehicle Act.'   An act entitled 'An act to regulate the operation of motor vehicles upon public highways, and making an appropriation for the purpose of carrying out the objects of this act,' approved March 22nd, 1905, and all acts or parts of acts amendatory thereof are hereby expressly repealed, and all other acts and parts of acts inconsistent herewith, are hereby repealed."

Briefly stated, the Motor Vehicle Act provides first, that no motor shall be operated at "such rate of speed as to endanger the life or limb of any person or the safety of any property."   This provision is independent of the provision fixing certain maximum speeds.   The act then fixes the maximum rate of speed generally, i. e., in sparsely settled portions of the country, at thirty miles an hour; next, where "the con-

tiguous territory is closely built up," the rate of speed is limited to twenty miles an hour; next, in the business districts of any incorporated city and county, city or town, the limit is fifteen miles per hour; and finally, where "the operator's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in approaching or traversing a bridge, dam, trestle, causeway or viaduct, or in going around corners or a curve in a street or highway," the limit is ten miles per hour.

The Merced ordinance fixes the limit of speed in all parts of the city at twelve miles per hour, regardless of crossings or intersecting streets or of obstructions to the view of the operator in approaching an intersecting way.

The authority of the city of Merced to pass ordinances is found in section 11, article XI of the constitution: "Sec. 11. Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

In the Municipal Corporation Act relating to cities of the sixth class, it is provided, by section 862, that the board of trustees of said city shall have power: "1. To pass ordinances not in conflict with the constitution and laws of this state or of the United States." (Stats. 1883, pp. 93, 269.)

It is contended, on behalf of the petitioner, that the Merced ordinance is void because in conflict with the Motor Vehicle Act of 1905 (Stats. 1905, p. 816) as amended in 1907 (Stats. 1907, p. 915). This alleged conflict, it is claimed, consists in the fact that the ordinance fixes a rate of speed greater than that prescribed by the state law and the further fact that, in violation of the principle enunciated in the case of *In re Sic*, 73 Cal. 142, [14 Pac. 405], the ordinance punishes the same offense as that covered by the state law.

It is also contended that the ordinance, if not in conflict with the Motor Vehicle Act in 1913, is unreasonable and not in exercise of the police power. It is unreasonable in that it fixes one rate of speed for all parts of the city in disregard of the requirements common to all similar ordinances regulating the speed of vehicles for the protection of persons and property at street crossings and in the business districts of the city where traffic is often congested. It is said not to be an exercise of the police power because the main purpose of the ordinance is to secure to the municipal treasury the fines col-

lected for violations which it is the design of the Motor Vehicle Act should go to the road fund of the county.

Petitioner raises the still further question,—namely, that the Motor Vehicle Act, by its repealing provisions, was intended to repeal all acts and parts of acts theretofore passed either by the legislature or by municipal ordinances; that if it did not have the effect of directly repealing local ordinances it was intended as a "uniform law for the whole state in regard to the regulation of all motor vehicles and thus do away with the great many automobile ordinances which had so vexed and annoyed the motorists of the state for so long.   The circumstances under which the law was passed and the notorious evils it was meant to remedy certainly strengthens this view of the meaning of the act and the intention of the legislature."

Upon this question, the attorney-general of the state, appearing *amicus curiae,* contends that the only law now in force upon the subject is the act of 1913; that the effect of that act is to render inoperative ordinances of incorporated cities, towns and of counties which attempt to regulate the speed of motor vehicles and to impose and collect fines for the violation of such ordinances.

Except as to "municipal affairs" concerning which cities having freehold charters (Merced is not among them) are, by the constitution, given exclusive authority to pass ordinances, and except where the state has relinquished control to municipalities, "the state in its sovereign capacity has the original right to control all public streets and highways" (*Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 116, [116 Pac. 557]); and this carries with it the power to make regulations for the use of streets in incorporated cities and towns.   Section 36 of article IV of the constitution provides that, "The legislature shall have power to establish a system of state highways or to declare any road a state highway . . . "   This control of the use of public streets has not, so far as we are aware, been relinquished by the state.

Merced is a city of the sixth class and, as we have seen, its authority goes no further than to "make and enforce within its limits, all such local, police, sanitary, and other regulations as are not in conflict with general laws."   (Const., art. XI, sec. 11.)   If, therefore, the Merced ordinance may be said to conflict with the Motor Vehicle Act or if this act can reason-

ably be held to have been intended to supplant all other legislation, state and local, with regard to the subject-matter of the act, clearly the Merced ordinance must stand aside. There may be a conflict where the act of the legislature follows as well as where it precedes the local ordinance. It is immaterial how or when the conflict arises if at the time of the alleged violation the ordinance is in conflict with existing general law.

The Motor Vehicle Act very properly provides for different speeds at different places and under different conditions in incorporated cities and towns for the obvious reason that where "the view of the road traffic is obstructed upon approaching an intersecting way," also, when "traversing a crossing or intersection of ways"; also, "in approaching a bridge, dam, trestle or viaduct"; also, in "going around corners or a curve in a street or highway," the danger to life and property is increased in direct proportion as the speed is increased. It follows that any reasonable rate of speed, deemed necessary for the protection of life and property, may be prescribed by the state as within its police power.

The Merced ordinance fixes one uniform rate of speed of twelve miles an hour for all parts of the city, whereas the state law limits the speed to ten miles an hour where the conditions are as last above pointed out, and allows fifteen miles an hour in other sections of the city. The Merced ordinance is in unmistakable conflict with the state law in allowing a speed of twelve miles per hour where the state law limits it to ten miles. The right of the city to regulate the rate of speed is claimed upon the reasoning in the case of *In re Hoffman,* 155 Cal. 114, [132 Am. St. Rep. 75, 99 Pac. 517]. In that case the state law was a general regulation for the sale of milk. It did not purport to make regulations for incorporated cities nor did it purport to limit the power of municipalities to legislate upon that subject. In the present case the Motor Vehicle Act deals specifically with the speed of motor vehicles within incorporated cities and towns and the regulations differ materially from those applicable to such vehicles operated outside of incorporated municipalities.

In passing through the city of Merced with a motor vehicle the operator might, while endeavoring in good faith to obey the law, find himself driving within his rights under the state law and at the same time be violating the local ordinance, or he might be driving no faster than the ordinance

allows and yet be in violation of the state law. It seems to us that the Merced ordinance in its present form is in irreconcilable conflict with the state law.

But, aside from these considerations, we are of the opinion that the Motor Vehicle Act was intended to provide uniform regulations to govern all persons in operating motor vehicles in incorporated cities and towns unless it may be where some exceptional conditions in such cities and towns demand a lower rate of speed in some parts thereof than is prescribed by the state law and such conditions clearly appear.

We have given the provisions of the Motor Vehicle Act at some length for the purpose of showing its scope and, if possible, to disclose the intention of the legislature in enacting it. Its title declares its intention to be to repeal all acts *"consistent"* as well as "in conflict" with it; in the body of the act public highways are declared to "include any public street, avenue, alley, park, parkway, or public place in any county or incorporated city and county, city or town"; it fixes different rates of speed for vehicles to meet the requirements for safety in traversing the streets of such cities and towns; it directs the local authorities having charge of the streets to assist in the execution of the law by placing "conspicuously thereon at both ends of such closely built up section signs of sufficient size to be easily readable to a person using the highway, bearing the words 'Slow down to —— miles' (inserting in the blank space preceding the word 'miles' the rate of speed prescribed by law and also an arrow pointing in the direction of the territory where the speed is to be reduced)"; and it defines who are meant by "local authorities"; it punishes a violation of the act by fine and directs that all fines shall be used for road purposes; it appropriates quite a large sum of money to be used by the engineer department and otherwise in carrying out the provisions of the law; it provides for the issuing of licenses to dealers in motor vehicles and to persons operating motor vehicles with which they become entitled to use the highways of the state subject to the regulations prescribed by the act for such use, and all revenue received from the original registration of these vehicles is to be used in the construction and improvement of the state and county highways, divided equally between the state and the county from which the registration comes; and finally, it ex-

pressly repeals the act of 1905 and its amendatory acts "and all other acts and parts of acts inconsistent herewith."

The Motor Vehicle Act, as is plainly manifest, has for its object the regulation of licensing and operating motor vehicles and the raising of revenue for the improvement of the state highways. Its importance as a means of raising revenue for this purpose can at once be seen from the amount derived for the six months ending June 30, 1914. The official reports show that the motor vehicle license amounted for that period to $1,218,466.00. There were 106,181 auto registrations and 21,701 motor-cycle registrations. Besides these, licenses were issued to 635 auto dealers, 184 motor-cycle dealers and 14,316 chauffeurs all of whom paid license fees which are to be devoted to the same uses. It will be recalled that the legislature submitted to the people of the state (Stats. 1909, p. 647) a general highway scheme involving a bonded indebtedness of eighteen million dollars. The act was approved by popular vote at an election in 1910. It was provided, by section 4 of the act, that the moneys derived from the sale of these bonds "shall be used exclusively for the acquisition of the rights of way for and the acquisition and construction of a system of state highways" and the act contemplated a highway system "to constitute a continuous and connected highway system" traversing the Sacramento and San Joaquin valleys and along the Pacific coast, "connecting the county seats of the several counties through which it passes and joining the centers of population, together with such branch roads as may be necessary to connect therewith the several county seats east and west of such state highway." Section 8 provides: "All public highways within the state lying within the right of way of said state highway as determined and adopted by the department of engineering shall be and the same shall become a part of the right of way of said state highway, without compensation being paid therefor." Section 9 places the "department of engineering in full possession and control of all roads . . . or other state highways which may be hereafter constructed."

Under this contemplated system now in course of execution, one or more streets in Merced, as in other county seats, will become a part of the state highway and the right to regulate the speed of vehicles over such streets should be in the state. We think it safe to say that the Motor Vehicle Act is intended

in no small degree to supplement the Highway Act of 1909, for it deals with and regulates the speed of all vehicles over all the highways and all the streets in the state whether within or without incorporated cities and towns. It is inconceivable that the legislature, in requiring the "local authorities" to post notices of the speed permitted under state law, contemplated that the local authorities might allow a different speed over the same street and punish the person who exceeded it.

It is suggested by respondent that the direction given in the act to these "local authorities" to post notices requiring persons using the street "to slow down——miles," means that the blank space was intended by the legislature to authorize the municipality to insert therein the speed prescribed by the municipality. Obviously, this interpretation is unwarranted.

The Motor Vehicle Act is essentially a revenue law as well as a regulatory measure. To allow incorporated cities and towns unrestricted authority to impose and collect fines for municipal purposes would tend to defeat one of the objects of the act, for it is common knowledge that most of the prosecutions for infractions of speed regulations arise within incorporated cities and towns. The view contended for by respondent would justify every municipality in the state in passing and enforcing ordinances different from the state law and different from each other, thus placing a most vexatious burden upon the users of our streets and highways in compelling them to become familiar with all these statutes. It seems to us that the legislature intended by the Motor Vehicle Act to avoid this possible confusion in the law governing the speed of motor vehicles.

The writ is granted and the petitioner is discharged.

Hart, J., and Burnett, J., concurred.