, [No. 2314]

## STATE OF NEVADA, Ex Rel. CITY OF RENO, a Municipal Corporation in Washoe County, Nevada, Plaintiff, *v.* RENO TRACTION COMPANY (a Corporation), Defendant.

[171 Pac. 375]

1. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—QUO WARRANTO BY STATE AGAINST FOREIGN CORPORATION—"CITIZEN."

Quo *warranto* proceeding by the state, on the relation of a city against a foreign corporation, for failure to comply with its franchise, instituted by the attorney-general, under Rev. Laws, 5656–5659, 5663, as to *quo warranto*, *held*, an action by the state, and not the city, preventing removal for diversity of citizenship; a state not being a citizen.

ORIGINAL PROCEEDING in *quo warranto* by the State, on the relation of the City of Reno, against the Reno Traction Company. Defendant moves to have the cause removed to the Federal Court. **Denied.**

*Geo. B. Thatcher*, Attorney-General, and *L. D. Summerfield*, City Attorney of Reno, for Plaintiff:

The record in this action shows that the removal is sought under the statutes of the United States providing that the district court of the United States shall have original jurisdiction of all suits of a civil nature at common law or in equity where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and is between citizens of different states. (Sec. 24, Judiciary Code, 36 St. at L. 1091; Compiled Stats. 1911, p. 135, 1912; Supp. F. S. A., vol. 1, p. 139.) The case at bar is not a suit between citizens of different states. The action was brought under the statutes of the State of Nevada, as set forth in sections 5655–5682, Revised Laws. The cause of action arises under paragraphs 3 and 4 of section 5657. An action in *quo warranto* can be brought only by the State of Nevada, and the only person who can file a complaint therein is the attorney-general. The present action was brought by the State of Nevada; the complaint was filed by the attorney-general; the State of Nevada sued on the relation of the city of Reno, a municipal corporation, and its

own agent. "Cities are mere instrumentalities of the state, for the convenient administration of government." (*City of Reno* v. *Stoddard*, 40 Nev. 537.)

The franchise involved relates to the right of the defendant to continue to use the public streets and highways within the city of Reno. These belong to the state, which is primarily interested in the use to which they are put. (28 Cyc. 287.)

The State of Nevada being plaintiff, the suit is not removable. The state cannot be a citizen, and therefore the case does not come within the provisions of the statute relating to diversity of citizenship. (*Arkansas* v. *Kansas & T. Coal Co.*, 183 U. S. 185; *Postal Telegraph-Cable Co.* v. *State of Alabama*, 155 U. S. 482; *Germania Ins. Co.* v. *State of Wisconsin*, 119 U. S. 473; *Stone* v. *South Carolina*, 117 U. S. 430; *Ames* v. *Kansas*, 111 U. S. 449; *In Re Rivers*, 199 Fed. 495; *State* v. *King*, 112 Fed. 369; *State* v. *Trust Co.*, 73 Fed. 914; *State* v. *Tolleston Club*, 53 Fed. 18; *State* v. *Wolfe*, 18 Fed. 836; *Darnell* v. *State*, 174 Ind. 143; *Comm.* v. *Ayer*, 117 Ky. 161; *Railway Co.* v. *Comm.*, 115 Ky. 278; *State* v. *Adams*, 9 Ohio Cir. Ct. 21.)

*Hoyt, Gibbons, French & Springmeyer* (*Goodfellow, Eels, Moore & Orrick*, of Counsel), for Defendant:

As to removal proceedings, a city is separate and distinct from the state. If it were not, no case in which a city was a party could be removed unless it arose directly under the constitution or laws or treaties of the United States; and there are innumerable cases of removal in which incorporated cities are taken to be in precisely the same position as private corporations; that is to say, if a municipal corporation is one of the parties to the suit and a private corporation or a private individual is the other party, the suit is removable on the grounds of diversity of citizenship. "A municipal corporation, such as a city, a township, or a county, or a public board, composed of public officers, which has been created a corporation by the state laws, is considered to be a citizen of the state within which it is situated, or to be composed

of citizens of that state." (Foster's Fed. Prac., 5th ed. vol. 1, sec. 47.) Cases in which counties are parties are removable. (*Lincoln County* v. *Luning*, 10 Sup. Ct. 363, 133 U. S. 529; *Floral Springs Water Co.* v. *Rives*, 14 Nev. 434.) A municipal corporation is a citizen of the state creating it, for the purposes of removal of causes to the federal courts. (*City* v. *Canda*, 67 Fed. 6; *City* v. *Sheppard*, 10 La. Ann. 268; *City* v. *Tacoma R. & P. Co.*, 244 Fed. 989.)

Although *quo warranto* historically is a *quasi*-criminal proceeding like *mandamus* and all extraordinary writs, under the Nevada practice and the prevailing modern view it is essentially civil in its nature. In all *quo warranto* proceedings the state is merely a nominal party plaintiff, while the relator is the real party in interest. The franchise sought to be forfeited is solely a grant through an ordinance of the city of Reno, the state being in no sense concerned with or interested in the suit, unless it be said that the state is interested in all matters of public welfare, and the state has no interest in franchises granted by cities to municipal corporations. (*State* v. *Ill. Cent. Ry. Co.*, 33 Fed. 721; *Ames* v. *Kansas*, 11 U. S. 460; 32 Cyc. 1414; *State ex rel. City of Tacoma* v. *Tacoma R. & P. Co.*, *supra*.)

*Quo warranto* proceedings may be tried in the federal courts. Section 28 of the Federal Judicial Code of 1912 is interpreted by the courts to include *quo warranto* proceedings as being of a "civil nature, at law or in equity." (*State ex rel. Johnson* v. *Ames*, 111 U. S. 449.)

By the Court, McCarran, C. J.:

This is an original proceeding in *quo warranto*. The defendant has filed the necessary notice, petition, and bond, and has moved this court for an order removing the cause to the United States District Court for the District of Nevada, upon the ground and for the reason that the controversy is between citizens of different states and that more than $3,000 is involved. It is admitted by the plaintiff here that there is involved more than $3,000. Objection is interposed to the removal,

however, on the ground that the State of Nevada is party plaintiff, and therefore the controversy is not between citizens of different states.

It is the contention of defendant, as movant in this proceeding, that the action is properly one between the city of Reno, as a municipal corporation, and the defendant as a foreign corporation. The complaint in this proceeding is entitled "State of Nevada ex rel. City of Reno, a Municipal Corporation." The proceedings were instituted in this court by the attorney-general of the State of Nevada, after having made application to this court for leave to bring action upon the relation of the city of Reno, and after having obtained orders granting leave pursuant to said applications. This action is commenced pursuant to the provisions of our civil practice act, sec. 714 (Rev. Laws, 5656, *et seq.*) :

"A civil action may be brought in the name of the state: 1. Against a person who usurps, intrudes into, or unlawfully holds or exercises, a public office, civil or military, or a franchise, within this state, or an officer in a corporation created by the authority of this state."

Section 5657, Revised Laws, provides:

"A like action may be brought against a corporation: 1. When it has offended against a provision of an act by or under which it was created, altered, or renewed, or any act altering or amending such acts. 2. When it has forfeited its privileges and franchises by a nonuser. 3. When it has committed or omitted an act which amounts to a surrender or a forfeiture of its corporate rights, privileges, and franchises. 4. When it has misused a franchise or privilege conferred upon it by law, or exercised a franchise or privilege not so conferred."

Section 5658, Revised Laws, provides:

"The attorney-general, when directed by the governor, shall commence any such action," etc.

Section 5659, Revised Laws, provides:

"Such officer [the attorney-general] may, upon his own relation, bring any such action, or he may, on the

leave of the court, or a judge thereof, in vacation, bring the action upon the relation of another person; and, if the action be brought under subdivision one of the first section of this chapter, he may require security for costs to be given as in other cases."

Section 5663, Revised Laws, provides:

"An action under this chapter can be brought in the supreme court of the state, or in the district court of the proper county."

On the face of the complaint it appears that the action is commenced by the State of Nevada, on the relation of the city of Reno, a municipal corporation. After relating the corporate existence of the city of Reno, as well as the corporate existence of the defendant, the complaint proceeds as to the adoption of a city ordinance by the city of Reno, which said ordinance granted to H. E. Reid, H. J. Gosse, H. J. Darling, and S. H. Wheeler, their successors in interest, and assigns, a franchise to construct, maintain, and operate a street railroad over certain streets and avenues in the city of Reno; that thereafter the franchise thus granted to the parties named was by them sold to the Reno Traction Company, defendant in the proceedings instituted in this court; that the Reno Traction Company constructed in the city of Reno street railway tracks on certain designated streets within the corporate limits of the city of Reno; that for more than three years last past the defendant, Reno Traction Company, has wholly failed, refused, and neglected at its own expense to keep the space within and between its railway tracks and for two feet on each side thereof on certain designated streets in as good repair as the adjoining street, although frequently directed by the city council of said city of Reno so to do during the period aforesaid.

The complaint sets up, by way of exhibit, Ordinance No. 28, under which the defendant, Reno Traction Company, obtained and secured its franchise, and in violation of the provisions of which it is alleged the traction

company has failed, refused, and neglected to keep its tracks and the space between the rails thereof in as good repair as the adjoining street. The complaint further alleges failure, refusal, and neglect on the part of the traction company to maintain its electrical equipment used in operating said street railway, so that return currents shall be carried according to the most approved method, so as to avoid, so far as possible, injury to the water pipes through property on certain designated streets; further, that for more than three years the defendant, Reno Traction Company, has failed, refused, and neglected to run cars sufficient for the transportation of all desiring passage over said railway tracks constructed under Ordinance No. 28; and that the failure, refusal, and neglect of the defendant in this respect was not due to the elements, riots, strikes, litigation, or other unavoidable causes. The complaint avers failure on the part of the traction company to comply with the city ordinance in the way of carrying lights on the front and rear of its cars during the nighttime, when the same were being operated over the. lines of the company on the streets designated.

Chapter 3 of the Judicial Code of the United States, relative to removal of causes, provides, *inter alia:*

"Any suit of a judicial nature, at law or in equity, arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority, of which the district courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the District Court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought in any state court, may be removed into the District Court of the United States for the proper district by the defendant or defendants

therein, being nonresidents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove such suit into the District Court of the United States for the proper district." (Judicial Code of the United States, c. 3, p. 22; U. S. Comp. St. 1916, sec. 1010.)

The motion for removal in this case is sought for solely upon the ground that it is a controversy between citizens of different states, the matter in controversy exceeding, exclusive of interest and costs, the sum of $3,000. In furtherance of this motion, the movant here asserts that the city of Reno is the real party in interest as plaintiff, and, it being a citizen of the State of Nevada, defendant may properly demand removal, being a citizen of California.

Mr. Moon, in his work on the Removal of Causes, concisely states the proposition thus:

"When does the duty of the state court 'to accept said petition and bond' arise? Clearly, if the language of the statute is given any force, it does not arise unless the suit is a removable one and petitioner is entitled to remove it; nor does it arise in any such case until the petition and bond have been made and filed in compliance with the statute. When the case is found to be a removable one, and the conditions precedent to a removal have been performed, then, and not until then, shall the state court 'accept said petition and bond and proceed no further in such suit.' " (Moon on Removal of Causes, sec. 177.)

Mr. Justice Harlan, in speaking for the Supreme Court of the United States in the case of *Crehore* v. *Ohio & M. R. Co.*, 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144, illuminated the subject by the following assertion:

"It thus appears that a case is not, in law, removed from the state court, upon the ground that it involves a controversy between citizens of different states, unless,

at the time the application for removal is made, the record, upon its face, shows it to be one that is removable. We say, upon its face, because 'the state court is only at liberty to inquire whether, on the face of the record, a case has been made which requires it to proceed no further,' and 'all issues of fact made upon the petition for removal must be tried in the circuit court.' * * * If the case be not removed, the jurisdiction of the state court remains unaffected, and, under the act of Congress, the jurisdiction of the federal court could not attach until it becomes the duty of the state court to proceed no further. No such duty arises unless a case is made by the record that entitles the party to removal."

It is a well-settled principle that a city as a municipal corporation is a citizen of the state within which it exists, within the meaning of the judicial code. (Foster, A Treatise on Federal Practice, vol. 1, p. 134; *Vincent* v. *Lincoln County,* 30 Fed. 749; *Lincoln County* v. *Luning,* 133 U. S. 529, 10 Sup. Ct. 363, 33 L. Ed. 766; *Loeb* v. *Columbia Twp.,* 179 U. S. 472, 21 Sup. Ct. 174, 45 L. Ed. 280.) Another principle which we deem to be established beyond successful controversy is that a suit between an incorporated city and a citizen of another state may be removed for diversity of citizenship. (*Ysleta* v. *Canda,* 67 Fed. 6.) The proposition before us may be put thus: If the action is one instituted by the state as the real party in interest against a foreign citizen, the cause is not removable. If the action is one between the city of Reno as plaintiff and a foreign citizen, the cause is removable, and the order prayed for should be entered.

It is the contention of the movant here that inasmuch as the franchise by authority of which they operate their street railroad was granted by the municipal corporation, and inasmuch as the streets over which their street railroad is operated are properly within and under the control of the city of Reno, therefore it is the municipal corporation that is the real party in interest; hence the cause should be removed for diversity of citizenship. It

is, as a proposition of law, eminently established that a municipal corporation is but the agency by and through which the state exercises its sovereignty in a given locality. The former is the creature of the latter and subject to its dominance and control within constitutional limitations. (*City of Reno* v. *Stoddard and Dunkle,* 40 Nev. 537, 167 Pac. 317.)

It is established by almost universal acceptation that the state, acting through its legislature, may exercise complete control and dominance over the streets, avenues, and alleyways of towns, cities, and municipal corporations. This rule has found sanction in the expression of courts in various proceedings and for many purposes. We find it asserted to permit public service corporations to lay pipes and wires. (*St. Paul* v. *Chicago R. Co.,* 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184; *Hodges* v. *W. U. Tel. Co.,* 72 Miss. 910, 18 South. 84, 29 L. R. A. 770; *Portland R. Co.* v. *Portland,* 14 Or. 188, 12 Pac. 265, 58 Am. Rep. 299; *San Antonio Traction Co.* v. *Altgelt,* 200 U. S. 304, 26 Sup. Ct. 261, 50 L. Ed. 491; 13 R. C. L. 163.) And where it was deemed necessary to destroy a public highway for the establishment of other public works. (*Heffmer* v. *Cass, etc., Counties,* 193 Ill. 439, 62 N. E. 201, 58 L. R. A. 353.) The rule has been invoked to require a municipal corporation to appropriate money for the maintenance of a public way. (*Pumphrey* v, *Baltimore,* 47 Md. 145, 28 Am. Rep. 446; *Simon* v. *Northrup,* 27 Or. 487, 40 Pac. 560, 30 L. R. A. 171.) It has been upheld where by legislative action the state sought to control certain streets of a city and to exercise that control through commissioners for the purposes of a driveway. (*People* v. *Walsh,* 96 Ill. 232, 36 Am. Rep. 135.)

In the case of *Cicero Lumber Co.* v. *Town of Cicero et al.,* 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155, the court said:

"While it is true that the public highways are for the use of the general public, it is at the same time true that

the legislature is a representative of the public at large. As such representative, it may grant the use or supervision and control over the highways to a municipal corporation, so long as the highways are not diverted to some use, substantially different from that, for which they were originally intended. * ,* * A city or incorporated town, not only bears a property or private relation to the state, but it also bears a political relation thereto. In its political relation, it is merely an agency of the state. The municipal corporations of the state are the mere creatures of the state, and exist by the authority of the legislature and subject to its control. Hence, when a city or incorporated town holds a street for the benefit of the public, it holds it for the benefit of that entire public, of which the legislature is the representative. As the municipality is a mere agent of the state, the legislature can direct the manner in which it shall control the streets within its limits. The property rights and easements, which the municipality has in public streets and ways, are held by it at the will of the legislature. Of course, this statement is subject to the further statement, that such property, as the municipality holds in its private capacity, is as much protected by the constitution as the property of the private citizen. But, so far as it holds property as a mere agency of the government of the state, the constitutional provisions above referred to have no application, because the state can control the agencies created by it for the purposes of government."

Mr. Dillon, in his work on Municipal Corporations, says:

"The plenary power of the legislature over streets and highways is such that it may, in the absence of such constitutional restrictions, vacate or discontinue them, or invest municipal corporations with this authority. Without a judicial determination, a municipal corporation, under the authority conferred by its charter to locate and establish streets and alleys and to vacate the

same, may constitutionally order a vacation of a street; and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner, claiming that he is interested in keeping open the streets dedicated to the public." (Dillon on Municipal Corporations, sec. 666.)

When the defendant in this action, through its predecessors, secured its franchise for the construction and maintenance of a street railroad on and over the streets and avenues of the city of Reno, it secured this franchise by the authority and grant of the, State of Nevada acting by and through its duly authorized agent, the city of Reno. To the city of Reno was delegated the power to grant the franchise and to pass ordinances in connection therewith. This, however, constituted but a delegation of authority, from the sovereignty of the state. A municipal corporation, it is said, has no powers which are not derived from and subordinate to those of the state. This has been held, even in cases where the municipal corporation had its existence before the state in which it was located became an independent sovereign. (*Mt. Pleasant* v. *Beckwith,* 100 U. S. 514, 25 L. Ed. 699; *Williams* v. *Eggleston,* 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047; *Attorney-General* v. *Lowrey,* 199 U. S. 233, 26 Sup. Ct. 27, 50 L. Ed. 167.)

It is stated in the text of Ruling Case Law that the people of a particular portion of a state, by enjoying the privilege of self-government, acquire no vested right therein as against the legislature representing the people of the state. (19 R. C. L. 731.) That the state, acting through its legislature, may exercise supreme control over all streets, alleyways, and avenues, has been declared to be a law in nearly every jurisdiction where the question has been brought before the courts. (*Grand Trunk R. R. Co.* v. *South Bend,* 227 U. S. 544, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. n. s. 405; *Marietta Chair Co.* v. *Henderson,* 121 Ga. 399, 49 S. E. 312, 104 Am. St. Rep. 156, 2 Ann. Cas. 83; *Cummins* v. *Seymour,* 79 Ind.

491, 41 Am. Rep. 618; *Stanley* v. *Davenport,* 54 Iowa, 463, 2 N. W. 1064, 6 N. W. 706, 37 Am. Rep. 216; *Ottawa R. R. Co.* v. *Larson,* 40 Kan. 301, 19 Pac. 661, 2 L. R. A. 59; *Crawford Electric Co.* v. *Knox County Power Co.,* 110 Me. 285, 86 Atl. 119, Ann. Cas. 1914c, 933; *Dooly Block* v. *Salt Lake Rapid Transit Co.,* 9 Utah, 31, 33 Pac. 229, 24 L. R. A. 610; *Ex Parte Smith,* 26 Cal. App. 116, 146 Pac. 82; *Heppes Co.* v. *Chicago,* 260 Ill. 506, 103 N. E. 455; *Wabash R. R. Co.* v. *Defiance,* 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; *United R. R. Co.* v. *Jersey City,* 71 N. J. Law, 80, 58 Atl. 71; *Hoey* v. *Gilroy,* 129 N. Y. 132, 29 N. E. 85; *Simon* v. *Northrup, supra; State* v. *Missouri Tel. Co.,* 189 Mo. 83, 88 S. W. 41; *Prince* v. *Crocker,* 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610; *Council Bluffs* v. *Kansas City Ry. Co.,* 45 Iowa, 338, 24 Am. Rep. 773; *La Harpe* v. *Elm Tp. Gas. Co.,* 69 Kan. 97, 76 Pac. 448; *Baltimore R. R. Co.* v. *Reaney,* 42 Md. 117; *Baird* v. *Rice,* 63 Pa. 489; 13 R. C. L. 163.)

It was the function of the state to determine as to what conveniences for traffic or travel the public might enjoy over the streets or avenues of the city of Reno. (*Cicero Lumber Co.* v. *Cicero, supra; Barrows* v. *Sycamore,* 150 Ill. 588, 37 N. E. 1096, 25 L. R. A. 535, 41 Am. St. Rep. 400; *Simon* v. *Northrup, supra.*)

The rule recognizing the sovereignty of the state over the streets and avenues of a municipal corporation within its borders, founded as it is upon necessity and reason, must be regarded as a reality and not a fiction. Hence in this case the state, looking to the mode of travel that was to be furnished as an accommodation to the public over the streets and avenues of the city of Reno, and being sovereign in control over those streets and avenues, granted, through its agent, the municipal corporation, a franchise to the predecessors in interest of defendant here. The granting of this franchise did not constitute a relinquishment of the sovereignty held by the state over those streets and avenues, nor a relinquishment of the power to control the letting and regulation of franchises on or over such streets and avenues.

The city of Reno as a municipal corporation may have had at all times an interest coordinate with the state in the letting of franchises for public service on the streets and avenues within its limits. This, however, in no wise detracted from the sovereignty or control or interest which the state held in the matter. If the state, exercising its right of control over the streets of the city of Reno, was the real party in interest, and only acted through its agent in the granting of the franchise to the predecessors of the defendant, then we take it that it will not be gainsaid that the state is the real party interested, looking to the carrying out of the terms of that franchise and the enforcement of the ordinance by and through which the franchise was in the first instance granted. In the action at bar the state proceeds in this court on the relation of the city of Reno, but the State of Nevada is the plaintiff and the real party in interest.

Aside from the fact that the state, being sovereign over the streets and avenues of the city, is therefore the real party in interest, hence the real party plaintiff, it must be further observed that, inasmuch as the action commenced in this court is a special proceeding, which under our statute could only be instituted by the state through its attorney-general, and which in this instance is instituted in strict compliance with that statute, courts are bound to regard the state as the real party plaintiff. The municipal corporation as such has no power under the statute to institute the proceeding. This right is limited to the state alone. Were we to hold that the municipality is the party plaintiff, as contended for by defendant here, then for want of authority in the plaintiff corporation the proceeding would fall, and there would be no cause of action to remove.

In view of the many decisions rendered by the federal courts and by the Supreme Court of the United States, we take it that it will not be seriously contended that the rule of diversity of citizenship operates for the purpose of removal under the judicial code, where the state is a party and the other party to the action is the citizen of a foreign state. The action here is not such as may

be termed a "suit arising under the constitution or laws of the United States or treaties made under their authority," inasmuch as a correct decision of the matter in controversy does not depend on the construction of either, nor is the title set up by the parties, so far as the pleadings are before this court, one such as may be denied by one construction of the constitution or the laws of the United States or sustained by the opposite construction. (*Cohens* v. *Virginia*, 6 Wheat. 379, 5 L. Ed. 257; *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 26 L. Ed. 96; *Starin* v. *New York*, 115 U S. 248, 6 Sup. Ct. 28, 29 L. Ed. 388.) "A suit by a state in one of its own courts cannot be removed," says the Supreme Court of the United States, "unless it be a suit arising under the constitution or laws of the United States or treaties made under their authority." (*Germania Ins. Co.* v. *State of Wisconsin*, 119 U. S. 473, 7 Sup. Ct. 260, 30 L. Ed. 461.) "A state is not a citizen," says the Supreme Court of the United States, "and, under the judiciary acts of the United States, it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the Circuit Court of the United States has no jurisdiction of it unless it arises under the constitution, laws or treaties of the United States." (*Postal Tel. Cable Co.* v. *Alabama*, 155 U. S. 482, 15 Sup. Ct. 192, 39 L. Ed. 231.)

In the case of *Arkansas* v. *Kansas & Texas Coal Co.*, 183 U. S. 185, 22 Sup. Ct. 47, 46 L. Ed. 144, the action was commenced by the State of Arkansas, on the relation of Jo Johnson, as prosecuting attorney for the Twelfth judicial circuit, against a foreign corporation defendant. The defendant filed a petition for removal to the United States court on the ground that the relator, Jo Johnson, was a citizen of Arkansas, and that the defendant was a citizen of Missouri. On refusal by the state court to remove, the matter was taken to the federal court. The latter refused to remand and retained the case for trial. On appeal to the Supreme Court of the United States, the action of the federal court in

refusing to remand was reversed. In speaking for the court, Mr. Chief Justice Fuller said:

"We need not spend any time on the contention that this was a controversy between citizens of different states. The circuit court correctly held otherwise. The State of Arkansas was the party complainant, and a state is not a citizen."

Holding to the same effect are the cases of *Postal Telegraph Cable Co.* v. *State of Alabama,* 155 U. S. 482, 15 Sup. Ct. 192, 39 L. Ed. 231; *Stone* v. *South Carolina,* 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962.

We are referred by defendant to a number of authorities which they claim to support their contention that this is a case for removal. In the case of *State of Illinois ex rel. Hunt, Attorney-General,* v. *Illinois Central R. R. Co.,* 33 Fed. 721, the action was in *quo warranto,* brought in the name of the state, by the attorney-general, to prevent a railroad from exercising certain rights and privileges and from controlling certain lands. The motion for removal was based upon ownership in land acquired under an act of the legislature; that subsequently the act granting the land was repealed, and that such repealing act was in violation of the provisions of the constitution of the United States relating to laws impairing the obligations of contracts and of the fourteenth amendment declaring that no person shall be deprived of property without due process of law. On motion to remand from the federal circuit court for the Northern District of Illinois, the court denied the motion, but rather upon the ground that the case was one arising under the constitution of the United States and involving the interpretation of the federal constitution, in order to arrive at a correct decision of the question presented. In that case the question of diversity of citizenship was not before the court.

In the case of *Ames* v. *Kansas ex rel. Johnston, Attorney-General,* 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482, two questions were considered by the Supreme Court of the United States: First, whether the

suit was of a civil nature, at law or in equity, arising under the laws of the United States; and, second, whether, if they were such, it could be removed under the act of March 3, 1875, inasmuch as it was brought by a state to try the right of a corporation and its directors to exercise corporate powers and franchises within the territorial jurisdiction of the state. The purpose of the action was to test the validity of a consolidation entered into between the Kansas Pacific Railway Company and the Union Pacific Railway Company. The case turned solely upon the validity of the consolidation in the light of authority conferred for that purpose by an act of Congress. In arriving at a determination as to the matter, the court said:

"If the acts of Congress confer the authority, the consolidation is valid; if not, it is invalid. Clearly, therefore, the cases arise under these acts of Congress, for, to use the language of Mr. Chief Justice Marshall in *Osborn* v. *United States Bank,* 9 Wheat. 825, 6 L. Ed. 204, an act of Congress 'is the first ingredient in the case—is its origin—is that from which every other part arises.' The right set up by the company, and by the creditors as well, will be defeated by one construction of these acts and sustained by the opposite construction. When this is so, it has never been doubted that a case is presented which arises under the laws of the United States."

We are referred to the case of *City of New Orleans* v. *Sheppard,* 10 La. Ann. 268. There the suit was instituted by the municipal corporation for an amount alleged to be due for municipal taxes. The defendant Sheppard took a rule to show cause why the suit should not be transferred to the Circuit Court of the United States, asserting in furtherance of his motion that he was a citizen of the State of Virginia. The municipality contested his citizenship. The trial court held, under the facts presented, that he was a citizen of the State of Louisiana. On appeal to the supreme court, that tribunal, reviewing the case, held that on the showing made

the defendant had established his citizenship in the State of Virginia, and, inasmuch as the action was between a citizen of the State of Louisiana as plaintiff and a citizen of a foreign state as defendant, the action was properly removable to the federal court. It will be noted that this case turned rather on a question of fact than on a proposition of law.

In the case of *City of Ysleta* v. *Canda et al.*, 67 Fed. 6, the controversy was between the city of Ysleta, a municipal corporation in El Paso County, Texas, as plaintiff, and a citizen of the State of New York. There the municipal corporation was suing in its individual corporate capacity, and the case was retained by the Circuit Court of the United States because this fact appeared on the face of the complaint. In the matter at bar we find from the face of the complaint that the action is one between the State of Nevada, on the relation of a citizen of that state, and a citizen of a foreign state. We are at a loss to discover the analogy.

In the case of *Vincent* v. *Lincoln County*, 30 Fed. 749, the action was between an individual citizen of a foreign state and one of the counties of this state. There it was established, in conformity with the decisions of this court (*Waitz* v. *Ormsby County*, 1 Nev. 370; *Clarke* v. *Lyon County*, 8 Nev. 181; *Floral Springs Water Co.* v. *Rives*, 14 Nev. 434), that a county as a municipal corporation, or at least as a *quasi* municipal corporation, was liable to be sued in any court of competent jurisdiction. In that action the state was not a party, either nominally or otherwise.

In the case of *State of Washington ex rel. City of Tacoma* v. *Tacoma Railway and Power Co.*, 244 Fed. 989, the action was in the form of a proceeding instituted pursuant to the code of the State of Washington for a writ of *mandamus* to compel the holder of a street railway franchise to operate cars on one of its lines, so as to render an adequate service, for the compensation of a single continuous trip. The question of diversity of citizenship was not considered by the court. We take it

from a reading of the opinion that it was conceded by all parties that the action was instituted by the city of Tacoma, acting in its individual corporate capacity. The Circuit Court of the Western District of Washington did not assume to determine its right to retain the action on the ground of diversity of citizenship. The court, after quoting from the statute of the State of Washington (Pierce's Code, 1905, sec. 1408), said:

"If this suit is such a proceeding as contemplated and authorized by the above-quoted sections of the code, for a writ of *mandamus* pure and simple, it is not cognizable in this court, and the motion to remand should be granted. It becomes necessary, however, for the court to examine the record, and form its own conclusion as to the real nature of the proceeding, irrespective of the means by which the litigants propose to obtain the relief desired. The affidavit of the mayor, which stands as the complainant's pleading, does not set forth any duty specifically enjoined by law, nor any specific right or office, to the use or enjoyment of which any particular person is entitled, and from which he has been unlawfully precluded. On the contrary, the proceeding is in the interest of the general public, and the grounds of complaint are neglect and refusal to render the service of a common carrier in accordance with general principles of law and in the discharge of an obligation assumed by contract. In other words, the powers of a court of equity are invoked to compel the specific performance of a contract."

In view of the fact that the question presented in the matter at bar turns squarely on the question of diversity of citizenship, rather than as to its being an action at law or in equity under the constitution of the United States or the acts of Congress, the Tacoma case, last cited, furnishes neither assistance to determine nor light to review the matter before us. If the authority last reviewed does anything, it inferentially supports the position which we take here. The observation of the court there made is pat in the matter at bar; there it is said:

"If this suit is such a proceeding as contemplated and

authorized by the above-quoted section of the code [Code of Washington], for a writ of *mandamus* pure and simple, it is not cognizable in this court, and the motion to remand should be granted."

The proceeding here is that contemplated and authorized by the different sections of the code of this state providing for actions in *quo warranto* to be instituted by the state through its adviser, the attorney-general, against a corporation, basing such proceeding on the several grounds nominated by the statute. It is therefore such a proceeding as, in the judgment of the learned federal court in the case of *Washington ex rel. City of Tacoma* v. *Tacoma, etc., Co., supra,* would call for an order to remand, were it in that jurisdiction.

Section 1 of article 8 of our constitution provides:

"The legislature shall pass no special act in any matter relating to corporate powers except for municipal purposes; but corporations may be formed under general laws; and all such laws may from time to time be altered or repealed."

Under the provision of the organic law quoted, plenary powers were reserved to the legislature to enact laws dealing with corporations and with franchises granted to corporations. Under this constitutional provision is contemplated statutes such as that under which this action was commenced. Franchises such as that held by the defendant issue from the sovereign. (*State ex rel. Kansas City* v. *Fifth St. R. R. Co.,* 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742.)

In the matter at bar the city of Reno could not, under the statute, bring this action in its own name. The proceeding is one reserved to the state.

It is suggested that, to justify this court in refusing to enter the order of removal, the action must be based upon some act done in violation of the common law or of the statute law of the state. In this respect it will be noted that the proceedings here are based on the violation of a city ordinance, passed in conformity with and under sanction and authority of our statutes. The very suggestion made is dealt with convincingly by the

Supreme Court of Wisconsin in the case of *State ex rel. Attorney-General* v. *Madison St. Railway Co.*, 72 Wis. 612, 40 N. W. 487, 1 L. R. A. 771. There it was said that a violation of the ordinance is a violation of the statute permitting such ordinance and sanctioning such franchise. The court observed:

"The common council, in passing the ordinance, acted as the agent of the state and as public officers by virtue of such delegated authority. The streets are for the public use, and so also are the street railways, affording increased advantages and facilities to the public, and they are primarily under the control of the legislature, and the power of the municipalities in respect thereto is entirely derived from the legislature. * * * The immunities and privileges granted to the company by the ordinance are as much the franchises of the corporation as if they had been directly granted by the statute under which it was organized. The common council of the city of Madison is authorized to grant them by the statute, and such power is a delegated one. What the common council does within that power is done by the legislature through its agency. The public has an interest in these franchises; the power to grant them, therefore, must be derived from the legislature."

To the same general effect was the declaration of the Supreme Court of the United States in the case of *Transportation Co.* v. *Chicago*, 99 U. S. 641, 25 L. Ed. 336.

It has been suggested that the ground relied upon in these proceedings is based entirely upon the violation of contractual rights flowing from the franchise granted by the city of Reno. In our judgment, it had better be said to be a proceeding where the ground relied upon is the abuse of corporate powers granted by the franchise and failure to comply with the requirements and conditions on which the franchise was acquired. It is a settled principle of law that the acts of a corporation in this respect can be assailed most appropriately in direct

proceedings brought by the state for that purpose. (*Hovelman* v. *Railroad,* 79 Mo. 643; *Mackall* v. *C. & C. Canal Co.,* 94 U. S. 308, 24 L. Ed. 161.)

This principle was asserted, with approved authorities, by the Supreme Court of the United States in the case of *National Bank* v. *Matthews,* 98 U. S. 628, 25 L. Ed. 188. This very suggestion was made to the Supreme Court of Kansas in the case of *City of Olathe* v. *Mo. & Kan. Interurban Ry. Co.,* 78 Kan. 193, 96 Pac. 42. The proceedings there, as here, were *quo warranto,* brought by the city of Olathe against the railway company, seeking to forfeit the rights granted by the ordinance to the corporation. It was contended by the company there that the controversy indicated by the petition related to mere matter of contractual rights between the city and the company, and was therefore not triable in *quo warranto* proceedings. The court there referred to its previous determination of the question in the case of *State* v. *Des Moines City Ry. Co.,* 135 Iowa, 694, 109 N. W. 867, saying:

"But it is a thoroughly well-established proposition that rights granted to a corporation, either directly, or by the state indirectly, through the act of a minor municipality authorized by the state, are to be regarded as franchises no less than is the right to be a corporation. Both classes of rights are derived mediately or immediately from the state, and both are subject to the inherent power of the state to guard against their abuse by the grantee or usurpation by a wrongdoer. The occupation of the public street for railway purposes is not a matter of common right, and without a legislative grant therefor the construction or maintenance of such a railway would expose the party responsible therefor to punishment as for a nuisance. The municipality to which is given authority to grant such privilege exercises a delegated power only, and it cannot grant to any person or corporation a privilege which is confessedly in derogation of the common right, in a manner which

shall exclude the power of the state to inquire into its abuse, or to prevent the subversion of the public interests which the legislative grant was intended to protect. * * * That the right to occupy the public streets with a railway depends entirely upon legislative grant and is therefore a franchise, notwithstanding the fact that the terms of such grant and their acceptance constitute also a contract, is too well settled to be open to serious question. * * * Not only is the application of *quo warranto* or its statutory substitute to cases of this kind upheld by the overwhelming weight of authority, but it is clearly in accord with the dictates of sound public policy."

At this point and pursuant to the objection made, it may be well to consider the nature of the proceeding instituted here, and which defendant seeks to remove. This is an action in *quo warranto*. The common-law writ of *quo warranto* was in the nature of a writ from the sovereign, directed to one who claimed an office or franchise. The purpose in cases of franchise was to require of the defendant that he show by what warrant he exercised such. This writ, or proceedings identical in nature, has been written into the statute law of many of the states of the union, and in nearly every instance the principles of the ancient writ have been recognized, in that the state has been made to take the place of the sovereign, the writ issuing from and by the state for the purpose of inquiring by what warrant an office or franchise is held or enjoyed. We have already made mention of the rule as to the propriety of the proceedings in *quo warranto* to test the right to exercise a franchise.

As regards foreign corporations it has been generally held that such like domestic bodies are subject to *quo warranto* proceedings to try rights to the enjoyment of franchises. (*State v. Western Union Mutual L. I. Co.,* 47 Ohio St. 167, 24 N. E. 392, 8 L. R. A. 129; *Attorney-General v. Booth Co.,* 143 Mich. 89, 106 N. W. 868.) The proceeding here, being that of *quo warranto,* is to be

distinguished from a proceeding involving acts violative of contractual obligations. So the matter at bar is, by reason of its nature, one to be distinguished from cases involving injunctive proceedings instituted to prevent municipalities from annulling or violating contractual relations by subsequent ordinance. *Quo warranto* inquires if, in view of certain alleged conditions, any franchise really exists.

One other view of this matter seems pertinent, in response to the suggestion. The franchise which is the subject-matter of the action here was accepted and its privileges enjoyed subject to the fulfilment of conditions therein expressly laid down. Under the ordinance by which the franchise came into existence, user and improvement being conditions stated upon which enjoyment might continue, the question cannot arise as to the impairment of the obligation of a contract; the company defendant having accepted its franchise privileges subject to the reserved power of the state to question by *quo warranto* proceedings the validity and existence of that franchise. (*Sioux City St. Ry. Co.* v. *Sioux City,* 138 U. S. 108, 11 Sup. Ct. 226, 34 L. Ed. 898; *State ex rel. Kansas City* v. *Fifth St. R. R. Co.,* 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742.)

Reference is made to section 26 of the city ordinance under which the franchise was granted. The latter part of that section reads:

"The said city shall thereupon be entitled to take such action and institute such proceedings as may be necessary or essential to have such forfeiture fixed and declared."

This provision in the ordinance of the city of Reno could not be said to abrogate or suspend the plain provisions of the statutes of the state providing for actions such as that instituted here. Indeed, the city could not by the mere adoption of this ordinance delegate to itself the sole power to fix or declare a forfeiture of the franchise. The identical question here suggested was dealt with under a similar provision of a city ordinance in the

case of *State ex rel. Kansas City* v. *Fifth St. R. R. Co.,* *supra,* where, referring to the provision of the ordinance as to the right of the city to proceed in its own name, the court said:

"The sovereign power of the state to proceed against defendant by *quo warranto* for forfeiture of its franchise, even at the relation of the city, cannot be contracted away or in any way abridged by the city. At most, such a provision in the ordinance only provided the city another remedy."

In this respect we might with propriety refer to similar analysis resorted to by the Supreme Court of Massachusetts in the case of *Attorney-General* v. *Tudor Ice Co.,* 104 Mass. 239, 6 Am. Rep. 227.

But there is yet another view to be expressed as to this section of the ordinance. It must be presumed that this ordinance was enacted by the city with a view to general laws and statutes bearing upon the institution of necessary or essential proceedings to have such forfeiture fixed and declared. By the very language of this section of the ordinance it is made plain that the city did not limit itself as to the manner or mode by which, or the jurisdiction in which, it would take action or institute such proceedings. If the city saw fit, as it did here, to make itself the relator to its sovereign, the State of Nevada, that the latter might, under constitutional rights and statutory provisions, institute this action, then it has done neither more nor less than that which by the language of the ordinance it declared the right to do.

Assuming that the city, acting in its own name, could have brought action to curtail or annul the franchise held by the defendant here, which is not according to our understanding of the law (*People* v. *Sutter St. Ry. Co.,* 117 Cal. 612, 49 Pac. 736), would the existence of such a right limit the city to that right only, if other modes or proceedings for accomplishing the same result were available? Or would the existence of such a right prevent the State of Nevada from instituting this action

on relation of the city? Manifestly not. Neither the institution of this action nor the enactment of the legislature providing for such constitutes an abrogation, abridgment, or circumscription of any right acquired by the city of Reno through the special act of incorporation. In the language of section 26 of the ordinance we find nothing which attempts to take from the force and effect of the general statute, nor which would attempt to bind the city to become the sole party plaintiff in taking such action or instituting such proceeding necessary or essential to have forfeiture declared.

It is asserted that to justify the refusal of this court to enter an order of removal under the statute the action must be based upon some act done in violation of the common law or of the statute law of the state. It will be sufficient to observe, in response to this suggestion, that the motion for removal here is instituted solely on the diversity of citizenship; and in view of the rule in that respect so oft declared, the movant here relies on the asserted fact that such diversity appears on the face of the complaint. Growing out of the suggestion it may be further observed that, in order to demand removal warrantable from the nature of the action, the latter must be such as, under the provision of chapter 3 of the judicial code, constitutes an action in law or in equity arising under the constitution or laws of the United States, which might be defeated by one construction of these acts or sustained by the opposite construction. (*Ames* v. *Kansas, supra.*) Such is not even contended for by eminent counsel here.

We must not be understood here as deciding any matter, save and except the question of the removal of the *quo warranto* proceedings from this court, where they were instituted, to the United States District Court for the District of Nevada, on the ground of diversity of citizenship. We do not, therefore, assume to determine the law of the case as regards the merits of the *quo warranto* proceedings. Many matters touched upon in the opinion are set up *arguendo,* and not as matters

which we assume to decide. In this proceeding on motion for removal there was in fact but one question to be determined, namely, as to whether the action here commenced was one by the city of Reno, as a citizen of the State of Nevada, against a citizen of a foreign state, or one between the State of Nevada and a citizen of a foreign jurisdiction. Having determined that it is the latter, and not the former, a mere suggestion as to the law fixing the jurisdiction of federal courts might have served to answer all other questions. This, however, is not for our concern.

We conclude the question, in the light of observations already made, by saying that, inasmuch as the matter pending in this court is a proceeding instituted by the State of Nevada as plaintiff, in conformity with statutory provision, notwithstanding that it is on relation of the city of Reno, the state, and not the municipal corporation, is the party plaintiff. The proceeding here, being one between the State of Nevada and a citizen of a foreign state, is not an action between citizens of different states, hence is not such as may be removed to the United States District Court on the ground of diversity of citizenship.

The motion for removal is denied.

It is so ordered.